# United States Court of Appeals
## For the First Circuit

No. 10-1230

UNITED STATES OF AMERICA,

Appellee,

v.

RAÚL POL-FLORES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Torruella, Siler,* and Howard, Circuit Judges.

Rafael F. Castro Lang for appellant.
Nelson J. Pérez-Sosa, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, was on brief for appellee.

April 29, 2011

---

* Of the Sixth Circuit, sitting by designation.

**Siler**, <u>**Circuit Judge**</u>. Raul Pol-Flores ("Pol") referred two investors to Luis Herrero-Rovira ("Herrero"), a friend and former co-worker. The investors were subsequently defrauded of their entire $290,000 investment, and Pol personally received nearly $20,000 of the misappropriated funds. He later was indicted and convicted by a jury on ten counts of wire fraud, and the district court sentenced him to 37 months' imprisonment. He now appeals both his conviction and sentence. We **AFFIRM**.

## I.

In 2006, two investors met Pol at a property closing. When they expressed their desire to invest money from the sale, Pol gave them Herrero's name and telephone number, describing him as a friend from when they worked together at a bank.

The investors called Herrero and met with him the week of the real estate closing. He talked to them about investments and said those he offered were guaranteed. Herrero explained that banks in Puerto Rico did not provide much interest and recommended they invest in Polarco, Inc., an entity he described as an investment company. The investors committed a total of $290,000 for a five-year period.

Pol was the incorporator and president of Polarco, a for-profit land development company. He was the only authorized signer on the account, and when the $290,000 investment was deposited, the bank contacted him because the amount was inconsistent with typical

deposits. Pol explained the funds were for carrying out investments but conceded he was not authorized to engage in such activity.  He subsequently informed the bank he was not going to carry out the transaction but rather would refund the money.

Herrero then returned the funds to the investors, but also talked with them about CLIEGG, International ("CLIEGG") as an investment option. He stated that the terms for investing in CLIEGG were the same as the terms for Polarco and that the investment was guaranteed.  They again committed $290,000 in funds to the care of Herrero, but, despite his assurances, the investors only received a single interest payment of $3,611.

CLIEGG was incorporated in the British Virgin Islands in October 2005, and its directors were Herrero, Pol, and a third unindicted individual.  CLIEGG opened its bank account the same day the $290,000 was deposited and was not authorized to sell investments in Puerto Rico.

The money deposited in CLIEGG was never used for investment purposes; rather, the CLIEGG account funded numerous wire transfers to banks in Puerto Rico totaling $119,072.  Herrero also made a total of $125,000 in cash withdrawals from the CLIEGG account.  Two of the wire transfers totaling almost $20,000 were made to Pol's company, Polarco.

Pol was found guilty by a jury on ten counts of wire fraud.  At sentencing, the district court imposed both a two-level

vulnerable victim enhancement and a twelve-level loss enhancement against Pol and sentenced him to 37 months' imprisonment, the bottom of his guidelines range.

**II.**

Pol contends there was insufficient evidence presented at trial to convict him as an aider and abettor to wire fraud.

When conducting a sufficiency review, we proceed de novo, United States v. Baltas, 236 F.3d 27, 35 (1st Cir. 2001), determining "whether a rational factfinder could have found each element of the crime in question beyond a reasonable doubt," United States v. Vazquez-Botet, 532 F.3d 37, 59 (1st Cir. 2008).

To be subject to aiding and abetting liability, an individual must have "in some way associated himself with the fraudulent scheme and . . . shared the criminal intent of the principal." United States v. Serrano, 870 F.2d 1, 6 (1st Cir. 1989). Pol has waived any challenge to the existence of the underlying wire fraud scheme. We therefore only review and decide the issue of Pol's participation in Herrero's fraudulent activity.

A reasonable jury could have concluded beyond a reasonable doubt Pol participated in Herrero's wire fraud scheme with knowledge and intent to defraud the investors. Pol is the person who gave the investors Herrero's name, and Herrero deposited the initial investment into the Polarco account, for which Pol was the only authorized signer. Furthermore, Pol was a director of

CLIEGG, was in the Dominican Republic when the funds were initially deposited into the CLIEGG account, and received two wire transfers representing nearly twenty thousand dollars of the investors' money. Pol also exchanged a total of 345 calls with Herrero over a six-month period spanning the time of the investment.

**III.**

Pol next contends the district court erred when it imposed a two-level vulnerable victim enhancement pursuant to USSG § 3A.1(b).

"We review the district court's interpretation and application of the Guidelines de novo and its factual findings for clear error." United States v. Bailey, 405 F.3d 102, 113 (1st Cir. 2005) (internal quotation marks and citations omitted).

Before imposing a vulnerable victim enhancement under §3A1.1(b), a court must determine 1) "that the victim of the crime was vulnerable" and 2) "the defendant knew or should have known of the victim's unusual vulnerability." United States v. Bailey, 405 F.3d 102, 113 (1st Cir. 2005) (internal quotation marks and citations omitted).

When the district court imposed the enhancement based on the vulnerability of one of the investors, it explained she was a senior. It continued

> She had just received the money after several
> years of trying to resolve the issue of the
> inheritance of her husband, who had passed
> away. She receives it and she wants to invest

that money. Those are her life savings, and she wants to invest that money so she received the interest and received an income throughout the rest of her life.

This was a proper application of the enhancement. The victim lost her investment in a Ponzi scheme to which she was particularly susceptible based on her advanced age, status as a widow, difficulty resolving her husband's estate, and desire to invest the money to establish an income. She died in 2008, between the time of the fraud and the trial. Her daughter indicated the mother's death was the result of emotional distress brought on from the loss of her money. Pol could observe she was a senior, knew of her desire to invest, and through his presence at the land closing reasonably should have known the circumstances of the sale.

**IV.**

Pol contends the district court further erred by imposing a loss enhancement pursuant to USSG § 2B1.1, which provides a twelve-level enhancement if the amount of the reasonably foreseeable pecuniary harm is between $200,000 and $400,000. This extends to reasonably foreseeable acts of others in furtherance of jointly undertaken criminal activity. United States v. Pizarro-Berrios, 448 F.3d 1, 6 (1st Cir. 2006).

The $290,000 in losses were reasonably foreseeable. Pol was a director of CLIEGG and, therefore, knew it did not have a Puerto Rican investment license. He received almost $20,000 of the funds in the form of a kickback. A reasonable person would know

that when a company is not authorized to manage an investment and pays kickbacks to one of its directors the entire investment sum is likely to be misappropriated.

**V.**

Pol finally contends that the district court's failure to grant a downward variance renders his sentence substantively unreasonable.

In reviewing the substantive reasonableness of a sentence, our inquiry examines "the totality of the circumstances." United States v. Stone, 575 F.3d 83, 94 (1st Cir. 2009) (internal citations and quotation marks omitted). We give deference to the district court's determination that the § 3553(a) factors justified a sentence, and it is not a proper basis for reversal that we would have sentenced the defendant differently. Id. Rather, "[t]he linchpin of a [substantively] reasonable sentence is a plausible sentencing rationale and a defensible result." United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008).

We have previously held "[o]ne ground supporting a below-guideline sentence could be that the intended loss attributed to [the defendant] overvalued the seriousness of the offense." United States v. Thurston, 456 F.3d 211, 219 (1st Cir. 2006), rev'd on other grounds, 552 U.S. 1092 (2008). While it is true Herrero misappropriated the bulk of the investment funds, it was Pol who connected the investors with Herrero and provided the initial bank

account for the investment. This crucial assistance made the fraudulent scheme possible, and, therefore, Pol's assistance was not so minor as to render his sentence substantively unreasonable.

We have also held, "[a] sentencing court could plausibly conclude that extremely divergent sentences would undermine the accepted notion that similar conduct should be punished in a somewhat similar manner." Id. at 219-20. While the court may have been authorized to grant a variance based on Herrero's sentence of probation (because of Herrero's mental illness), Pol cites no authority holding that it was required to do so. This therefore does not render his sentence substantively unreasonable.

The district court also did not abuse its discretion by failing to give greater weight to Pol's personal circumstances pursuant to 18 U.S.C. § 3553(a). Rather, the district court was entitled to conclude an educated person with a stable family who does charity work should be sentenced within his guideline range.

**AFFIRMED.**