# United States Court of Appeals
## For the First Circuit

No. 22-1077

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS MIGUEL CONCEPCION-GULIAM,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Kayatta, Selya, and Montecalvo,
Circuit Judges.

Anthony D. Martin on brief for appellant.
Rachael S. Rollins, United States Attorney, and Mark T. Quinlivan, Assistant United States Attorney, on brief for appellee.

March 10, 2023

**SELYA**, **Circuit Judge**. Defendant-appellant Carlos Miguel Concepcion-Guliam challenges both his conviction and his sentence on various grounds. Although his attack is multi-dimensional, we conclude that all of its several components are without force. Accordingly, we affirm.

**I**

We rehearse the relevant facts, recounting them "in the light most hospitable to the verdict, consistent with record support." United States v. Tkhilaishvili, 926 F.3d 1, 8 (1st Cir. 2019); see United States v. Norris, 21 F.4th 188, 191 (1st Cir. 2021); Casillas-Díaz v. Palau, 463 F.3d 77, 79 (1st Cir. 2006). We then map the travel of the case.

On June 19, 2019, an employee of the Extra Space Storage facility in Stoughton, Massachusetts, contacted the Stoughton Police Department (SPD) to report suspected narcotics in Unit 171. Rental payments on the unit had lapsed, and management permitted an officer to observe the drugs (which were in plain view inside the unit). SPD officers then obtained and executed a search warrant for Unit 171. Although the unit had been rented by Janice Bryant, the officers retrieved documents from within the unit bearing the name "Jason Torres." Subsequent inquiry identified "Jason Torres" as a pseudonym for Randy Guerrero. The search also revealed a treasure trove of drug paraphernalia and drugs:

blenders, scales, lactose (a cutting agent), sifters, plastic baggies, and around sixty grams of fentanyl and valeryl fentanyl.

The next day, the SPD officers obtained and executed a search warrant with respect to Unit 1435 — a second-floor unit at the storage facility, which had been rented in the name of "Jason Torres." Inside that unit, the officers found an assortment of controlled substances, a blender, a scale, and plastic baggies.[1] Once all the contraband was seized, the officers closed and latched the door to Unit 1435, leaving a copy of the search warrant in plain view atop a storage bin in the middle of the unit. They then set up surveillance.

About three hours later, an SUV entered the storage facility and parked at the entrance leading up to the second floor. The defendant exited the vehicle and entered the facility. Approximately twenty seconds later, he sprinted back to the SUV, jumped into the driver's seat, and began to reverse. By then, police officers in marked cruisers blocked his path. After momentarily stopping, the defendant accelerated and crashed into one of the cruisers. He was subsequently arrested, and a search

---

[1] The drug cache found in Unit 1435 was as follows: 1,080 grams of fentanyl, acetyl fentanyl, valeryl fentanyl; 0.2 grams of fentanyl and valeryl fentanyl; 663.1 grams of fentanyl; 17.1 grams of cocaine base; and 970.4 grams of cocaine. The quantities of fentanyl and cocaine were packaged both in individual baggies containing less than two grams each and in larger pressed bricks (packaged in vacuum-sealed bags).

incident to his arrest recovered four grams of fentanyl on his person. The packaging of that fentanyl was consistent with the individual packaging of the fentanyl located in Unit 1435.

On July 24, 2019, a federal grand jury sitting in the District of Massachusetts returned an indictment charging the defendant with attempted possession with intent to distribute 400 grams or more of fentanyl. See 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vi), 846. The defendant maintained his innocence, and on February 24, 2020, he moved to suppress, among other things, his arrest, all evidence obtained incident to his arrest, and all evidence seized from the two storage units. But days before the scheduled hearing on his motion to suppress, the defendant withdrew his motion.[2]

Trial began on June 2, 2021. The government called as witnesses SPD Detective Robert Kuhn, Janice Bryant, SPD Officer Steven Camara, and Drug Enforcement Administration Task Force Officer Brian Simpkins. At the close of the government's case in chief, the defendant moved for judgment of acquittal. See Fed. R.

---

[2] A few days before trial, the defendant filed a motion in limine, seeking to preclude the government from introducing a golconda of evidentiary items, including "[a]ll items seized when [the defendant] was arrested and taken at gunpoint into custody." The district court denied this motion in an electronic order on June 1, 2021. The parties make no mention of this motion and order in their appellate briefs, and we deem any objection to the electronic order to be waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 4 -

Crim. P. 29(a). The district court denied his motion. The defense rested without calling any witnesses or presenting any evidence, and the defendant renewed his motion for judgment of acquittal. See id. That motion, too, was denied. The court submitted the case to the jury, which found the defendant guilty.

Following the jury's verdict, the defendant filed four post-trial motions seeking either judgment of acquittal or a new trial. See id. 29(c). In an electronic order, the district court denied all four motions.

The disposition hearing was held on October 27, 2021. The court adopted the presentence investigation report, which delineated a total offense level (TOL) of thirty-four and a criminal history category of I. It then reduced the TOL by two levels and set the guideline sentencing range at 121 to 151 months.

The prosecutor asked the court to impose a bottom-of-the-range sentence: 121 months. Defense counsel submitted "that the appropriate sentence [for the defendant] would be something between the 0 time received by Ms. Bryant [who rented Unit 171] and the 72 months received by Mr. Guerrero [who allegedly owned the drugs in Unit 1435]." In the end, he asked for a "time served" sentence (roughly twenty-six months).

The district court queried the prosecutor as to why the defendant should receive a longer sentence than Guerrero (the putative owner of the drugs). The prosecutor replied that Guerrero

was not charged for the same conduct: Guerrero's "was a separate matter involving different drugs on different occasions that didn't involve this defendant." Following the defendant's allocution, the court imposed a 108-month term of immurement. In explaining its sentence, the court noted, among other things, that the defendant's conduct was not an isolated event but that the evidence showed that he had been selling a significant quantity of drugs for over a year.

This timely appeal ensued.

## II

In this venue, the defendant advances several assignments of error. First, he launches a Fourth Amendment challenge to his arrest and to the seizure of evidence from his person. Second, he challenges the admission of what he curiously terms "lay opinion testimony." Third, he mounts a sufficiency-of-the-evidence claim. Fourth, and finally, he raises claims of sentencing error. We address these matters sequentially.

## A

We begin with the defendant's Fourth Amendment challenge: his claim that his arrest and the subsequent search of his person were unreasonable. This claim does not get out of the starting gate. When a defendant raises a Fourth Amendment claim before the district court and subsequently withdraws that claim, he has waived the claim and is precluded from resurfacing it on

appeal.[3] See United States v. Orsini, 907 F.3d 115, 120 (1st Cir. 2018) (explaining that once waived, a claim of error ordinarily may not be resurrected on appeal); United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002) (explaining that "[a] party waives a right when he intentionally relinquishes or abandons it").  That is precisely the situation here:  "[a] party who identifies an issue, and then explicitly withdraws it, has waived that issue." Rodriguez, 311 F.3d at 437.

**B**

The defendant next objects to what he styles as Detective Kuhn's "lay opinion testimony."  Despite this generic reference, though, the only "testimony" that the defendant singles out is Detective Kuhn's purported state-of-mind testimony and, specifically, "whether [the defendant] attempted to open the door of the storage unit."  This claim of error falls only awkwardly — if at all — under the "lay opinion testimony" label, see Fed. R. Evid. 701; United States v. Valbrun, 877 F.3d 440, 443 (1st Cir. 2017), and — more importantly — reflects an effort to reinvent the record.  As such, the claim of error founders.

---

[3] We note that "the waiver rule may 'admit[] of an occasional exception' in extraordinary circumstances."  United States v. Orsini, 907 F.3d 115, 120 (1st Cir. 2018) (alteration in original) (quoting Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 627 (1st Cir. 1995)).  The defendant does not argue that extraordinary circumstances are present here.  And in all events, we discern none.

We ordinarily review claims relating to the admission or exclusion of evidence for abuse of discretion.  See United States v. Kilmartin, 944 F.3d 315, 335 (1st Cir. 2019).  Here, however, the defendant did not object below to the admission of the evidence that he now challenges.[4]  Our review, therefore, is only for plain error.  See United States v. Etienne, 772 F.3d 907, 913 (1st Cir. 2014); United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

Plain error review is "not appellant-friendly."  United States v. Rodriguez, 919 F.3d 629, 634 n.1 (1st Cir. 2019).  To prevail under plain error review, the defendant must carry the devoir of persuasion as to each of "four showings:  (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  Duarte, 246 F.3d at 60; see United States v. Pinkham, 896 F.3d 133, 136-37 (1st Cir. 2018).

We need not tarry.  Here, Detective Kuhn did not offer any testimony as to the defendant's state of mind.  He only testified as to what he personally had observed:  that — while

---

[4] In the court below, the defendant did object to the admission of lay opinion testimony on other grounds, including as it related to the modus operandi of drug traffickers.  He did not object, however, to Detective Kuhn's purported state-of-mind testimony. It is well settled that "an objection to the admission of evidence on one ground does not preserve other grounds for appeal."  United States v. Iwuala, 789 F.3d 1, 7 (1st Cir. 2015).

surveilling the storage facility — he saw the defendant arrive in an SUV and enter the only door leading up to the second floor. About twenty seconds later, the defendant sprinted out of the building. After the defendant's arrest, Detective Kuhn went to the second floor and observed that the door to Unit 1435 was open even though the officers had closed it following their execution of the search warrant three hours earlier. Detective Kuhn added that the facility had been under surveillance, that neither he nor any other officer had opened that door since executing the search warrant, and that no other person had entered that portion of the facility. The inference was virtually inescapable — though not explicitly stated by Detective Kuhn — that the defendant must have opened the door.

Notably absent from Detective Kuhn's testimony is any mention of the defendant's state of mind. Detective Kuhn's testimony focused exclusively on the defendant's actions, as observed by him. The district court did not err — let alone plainly err — in allowing this testimony. See Fed. R. Evid. 602.

C

We turn next to the defendant's challenge to the sufficiency of the evidence. "We review preserved objections to evidentiary sufficiency de novo." United States v. Gobbi, 471 F.3d 302, 308 (1st Cir. 2006); see Kilmartin, 944 F.3d at 325. In conducting this tamisage, we scrutinize all the evidence in the

light most hospitable to the jury's verdict, draw all reasonable inferences to the government's behoof, "and ask whether a rational jury could find that the government proved all the elements of the offense beyond a reasonable doubt." United States v. Fuentes-Lopez, 994 F.3d 66, 71 (1st Cir. 2021); see United States v. Rodríguez-Vélez, 597 F.3d 32, 38-39 (1st Cir. 2010).

In this instance, the defendant was convicted of attempted possession with intent to distribute 400 grams or more of fentanyl. "To prove attempt, the government must show that a defendant intended to commit the substantive offense and that he took a substantial step toward its commission." Gobbi, 471 F.3d at 309. Here, the substantive offense was possession of a controlled substance with intent to distribute. See 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vi), 846; see also United States v. García-Carrasquillo, 483 F.3d 124, 130 (1st Cir. 2007). "[P]ossession may be either actual or constructive." Gobbi, 471 F.3d at 309. "Actual possession is 'the state of immediate, hands-on physical possession.'" Id. (quoting United States v. Zavala Maldonado, 23 F.3d 4, 6 (1st Cir. 1994)).

On appeal, the defendant complains that the government failed to prove beyond a reasonable doubt both that he intended to possess the fentanyl found in Unit 1435 and that he intended to distribute it. We do not agree.

- 10 -

As a start, a jury reasonably could conclude — as this jury did — that the defendant intended to possess the fentanyl found in Unit 1435 and that he took a substantial step toward effectuating that possession.  Detective Kuhn testified that after seizing the drug paraphernalia and fentanyl from the unit, the officers left a copy of the search warrant on top of a storage bin inside the unit.  The warrant was placed in a conspicuous manner so that anyone entering the storage unit "would see it immediately."  The officers then closed the storage unit and commenced surveillance.

Approximately three hours later, Detective Kuhn observed the defendant enter the storage facility and park next to the entrance leading up to the second floor where Unit 1435 was located.  The defendant left the vehicle, went through the door, "and less than 20 seconds [later] appeared in a full sprint back towards th[e] black SUV."  Following the defendant's arrest, Detective Kuhn returned to Unit 1435 and found the door to the storage unit open.  Detective Kuhn testified that neither he nor any other officer had opened the door.  He also testified that no one else had entered the facility during the relevant time frame.

Based on this testimony, the jury reasonably could have inferred that the defendant took a substantial step toward possessing the fentanyl inside Unit 1435 and that he intended to possess those drugs.  This inference was reinforced by the fact

- 11 -

that the defendant carried corner bags that were consistent with those found in Unit 1435 in size, color, and texture.

Similarly, a jury reasonably could infer that the defendant intended to distribute the fentanyl. "An inference of intent to distribute may be drawn from the circumstances surrounding possession," including the defendant's statements and conduct and whether the drug quantity was "too large for personal use only." United States v. Bobadilla-Pagán, 747 F.3d 26, 33 (1st Cir. 2014); see United States v. Mendoza-Maisonet, 962 F.3d 1, 12 (1st Cir. 2020).

The record in this case makes manifest that the defendant intended to distribute the fentanyl. For one thing, Bryant identified the defendant as a drug courier. Bryant testified that she regularly purchased fentanyl from a man she identified as "Junior." In the beginning, Junior delivered the fentanyl to her himself, but eventually, others started delivering the fentanyl that she purchased from him. Bryant identified the defendant as one of those delivery persons: she stated that she met with the defendant "[a]lmost every day" for "[m]any months" to purchase fentanyl.

For another thing, the quantity and packaging of the fentanyl was consistent with that intended for distribution. Detective Kuhn testified that vacuum-sealed bags are used "[t]o compress the narcotics for transportation purposes" so as to

facilitate subsequent sales and that corner bags are used "[f]or distribution purposes." The jury was entitled to credit these statements, see Mendoza-Maisonet, 962 F.3d at 14, and, at any rate, the jury reasonably could have inferred that the fentanyl — given the quantity found — was not intended for personal use but, rather, for distribution, see United States v. Ayala-García, 574 F.3d 5, 13 (1st Cir. 2009) ("[A] large amount and individual packaging of drugs is sufficient to demonstrate an intent to distribute for purposes of section 841(a)(1).").

We add, moreover, that these inferences were strengthened by the defendant's on-the-spot conduct. Evidence of flight may form a basis for an inference of consciousness of guilt. See United States v. Benedetti, 433 F.3d 111, 116 (1st Cir. 2005). Here, the defendant's hasty getaway attempt (which included frantically accelerating his vehicle in reverse and crashing it into a police cruiser) was fertile ground for an inference of consciousness of guilt.

In an effort to cushion the clout of this evidence, the defendant argues that Detective Kuhn's testimony is "[d]eficient" because "there [was] no direct evidence to support" the conclusion that the defendant entered the storage facility with the intent to possess and to distribute the fentanyl. Direct evidence, though, is not essential to ground a conviction; circumstantial evidence alone may suffice. See United States v. Ortiz, 966 F.2d 707, 711

- 13 -

(1st Cir. 1992). And the circumstantial evidence here was powerful: it fully supported the jury's determination that the defendant sought to possess the fentanyl in the unit in order to distribute it.

In a last-ditch effort to tip the scales, the defendant argues that Detective Kuhn's testimony is "[s]peculative." He suggests that "it is plausible to assume" that the defendant was at the storage facility to meet a drug dealer. But this suggestion is plucked from thin air: there is simply no evidence in the record to support it. And, moreover — even if we assume its plausibility — our task is not to choose among plausible though competing inferences but, rather, to "honor the jury's evaluative choice." Rodríguez-Vélez, 597 F.3d at 40.

That ends this aspect of the matter. Considering all the evidence presented and the reasonable inferences therefrom in the light most favorable to the jury's verdict, we hold that the evidence was sufficient to support the defendant's conviction for attempted possession with intent to distribute fentanyl.

**D**

This brings us to the defendant's claims of sentencing error. The defendant contends that his sentence is both procedurally infirm and substantively unreasonable. We examine these contentions separately. See United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011).

**1**

The defendant's claim of procedural error centers on the district court's explanation of the sentence imposed.  When — as in this case — a defendant fails to raise a claim of procedural error in the court below, our review is only for plain error.  See United States v. Rijos-Rivera, 53 F.4th 704, 708 (1st Cir. 2022); Duarte, 246 F.3d at 60.  Because we discern no error — plain or otherwise — the defendant's claim fails.

When imposing a sentence, the court is obligated to "state in open court the reasons for its imposition of [a] particular sentence."  18 U.S.C. § 3553(c); see United States v. Vega-Salgado, 769 F.3d 100, 103 (1st Cir. 2014).  This obligation does not require that a sentencing court address each of the sentencing factors limned in 18 U.S.C. § 3553(a) but, rather, that it "identify the main factors driving its determination."  United States v. Sepúlveda-Hernández, 817 F.3d 30, 33 (1st Cir. 2016).

The court below did just that.  After hearing from the government, defense counsel, and the defendant, the district court pronounced its downwardly variant sentence.  It then succinctly explained its sentencing determination, noting that the defendant's offense conduct was not a "mistake."  Instead — the court elaborated — the evidence showed that the defendant was "selling drugs . . . for well more than a year and this [entailed] a vast quantity of drugs."  The court took into account mitigating

factors, commenting that the defendant was "a good family man" and that separation from his daughter would be "terrible." Given this focus, we cannot give credence to the defendant's complaint that the court's pronouncement of sentence was "bereft of any discussion or consideration of [his] particular circumstance[s]."

Relatedly, the defendant assails the sentencing court because it "fail[ed] to address the question of sentencing disparity." This assault misses the mark.

We agree that in imposing sentences, courts are mandated "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); see United States v. Rivera-Gonzalez, 626 F.3d 639, 647-48 (1st Cir. 2010). To make out a successful claim of sentencing disparity, though, a defendant "must compare 'apples . . . to apples.'" United States v. Bedini, 861 F.3d 10, 21 (1st Cir. 2017) (alteration in original) (quoting United States v. Mateo-Espejo, 426 F.3d 508, 514 (1st Cir. 2005)). A claim of sentencing disparity "will not succeed if there are 'material differences between [the complaining defendant's] circumstances and those of [his] more leniently punished confederates.'" United States v. García-Sierra, 994 F.3d 17, 40 (1st Cir. 2021) (first alteration in original) (quoting United States v. Galindo-Serrano, 925 F.3d 40, 52 (1st Cir. 2019)).

- 16 -

The court below was sensitive to the possibility that sentencing disparities might arise. The court asked the prosecutor why the defendant "should . . . get more [time] than" Guerrero (who was sentenced to seventy-two months in prison). The prosecutor explained — without contradiction — that "Guerrero was not actually charged . . . for the same conduct." She elaborated that the defendant was comparing "apples and oranges" because Guerrero's situation "was a separate matter involving different drugs on different occasions." On this record, we cannot say that the sentencing court erred in determining that there was no sentencing disparity.

Nor does the record suggest any disparity with respect to Bryant. Even though the district court did not specifically inquire as to why the defendant should serve more time in prison than Bryant, there is no indication in the record that Bryant was charged with any crime.[5] Moreover, her history of criminal convictions (if any) is unknown. Given these uncertainties, she is simply not a fair comparator. And because the court adequately

---

[5] The defendant's plaint that Bryant "was doing exactly what [he] was purportedly doing, but . . . faced no charges" is unavailing. Even assuming that the defendant and Bryant engaged in comparable misconduct, it is entirely "within the government's discretion to charge similarly situated defendants differently. Only when a prosecutor discriminates against defendants based on impermissible criteria such as race or religion is a prosecutor's discretion subject to review and rebuke." United States v. Rodriguez, 162 F.3d 135, 153 (1st Cir. 1998) (footnote omitted). There is no such allegation here.

explained the sentence it imposed, the defendant's claim of procedural error fails.

**2**

We review the substantive reasonableness of a sentence for abuse of discretion. See Holguin-Hernandez v. United States, 140 S. Ct. 762, 766-67 (2020). "There is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." Clogston, 662 F.3d at 592. In assaying the reasonableness of a challenged sentence, we ask "whether the sentence falls within this broad universe." United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020). A sentence will find a home within this broad universe if it rests on "a plausible rationale and . . . represents a defensible result." Id. And when — as in this case — a defendant challenges a downwardly variant sentence, he must carry a particularly heavy burden to show that the length of the sentence imposed is unreasonable. See United States v. deJesús, 6 F.4th 141, 150 (1st Cir. 2021); United States v. Millán-Machuca, 991 F.3d 7, 32 (1st Cir. 2021).

Here, the sentencing court's rationale was plausible. As we already have explained, the court's reasoning stressed the gravity of the offense and the defendant's relevant conduct. So, too, the sentence imposed represented a defensible result. The defendant was charged with attempting to possess with intent to distribute 400 grams or more of fentanyl. Fentanyl is an extremely

- 18 -

dangerous drug, widely reputed to be the modern-day equivalent of the Grim Reaper. And to heighten the seriousness of the defendant's conduct, the evidence at trial showed that he had been peddling fentanyl for over a year, in what the district court supportably described as "vast" quantities. Given these facts, we cannot say that the downwardly variant sentence that the district court imposed was beyond the universe of reasonable sentences.

The defendant attempts to do double duty with his claim of sentencing disparity by recasting it as a claim of substantive unreasonableness. But it is no more convincing the second time around. As we already have pointed out, the defendant does not base this claim on an apples-to-apples comparison. And in the absence of any such comparator, the claim shrivels. See United States v. González-Barbosa, 920 F.3d 125, 131 (1st Cir. 2019).

No more need be said. We find the defendant's sentence to be substantively reasonable.

## III

We need go no further. For the reasons elucidated above, the defendant's conviction and sentence are

**Affirmed**.