# United States Court of Appeals
## For the First Circuit

No. 22-1857

UNITED STATES OF AMERICA,

Appellee,

v.

NYCOLE AMAURY ROSARIO SÁNCHEZ, t/n Nyckole Amaury Rosario
Sánchez,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Gelpí, Circuit Judges.

Raúl S. Mariani-Franco, with whom Allan A. Rivera-Fernández
was on brief, for appellant.

Sean P. Murphy, with whom W. Stephen Muldrow, United States
Attorney, Mariana E. Bauzá-Almonte, Assistant United States
Attorney, Chief, Appellate Division, and Maarja T. Luhtaru,
Assistant United States Attorney, were on brief, for appellee.

July 3, 2025

**GELPÍ**, **Circuit Judge**. Defendant-Appellant Nycole Amaury Rosario-Sánchez ("Rosario"), alongside six other individuals, committed a deadly crime spree over the course of ten days in January 2018.[1] They robbed three Puerto Rican businesses, forcibly carjacked two vehicles, and killed four people. Rosario pleaded guilty to these crimes, and the district court subsequently sentenced him to 480 months' imprisonment. Rosario now challenges that sentence, chiefly arguing that the district court failed to adequately consider both (1) certain mitigating factors and (2) the "sentencing disparity" as between Rosario and his co-defendants. For the reasons we will explain, we **affirm** Rosario's sentence.

## I. Background

This sentencing appeal follows a guilty plea, so we draw the following facts from the plea agreement, the unobjected-to Presentence Investigation Report ("PSR"), and the change of plea and sentencing transcripts. See United States v. Melendez-Hiraldo, 82 F.4th 48, 51 n.1 (1st Cir. 2023) (citing United States v. Spinks, 63 F.4th 95, 97 (1st Cir. 2023)).

---

[1] Rosario's co-defendants -- Omar Rivera-Moyet, Dereck Muñoz-Nieves, Daniel Dennes-García, Edwin O. Gómez-Caraballo, and Christopher Vázquez-Agosto -- were separately sentenced by a different judge. See United States v. Rivera-Moyet et al., No. 3:18-cr-00023-PAD; United States v. Vázquez-Agosto, No. 3:21-cr-00388-PAD. Though those individuals were separately charged and sentenced, we generally use the term "co-defendants" for ease of reference throughout this opinion.

On January 4, 2018, Rosario (fifteen years old at the time) and his accomplices began their series of crimes by robbing a pizzeria in Yabucoa, Puerto Rico. "Rosario . . . brandished and discharged a firearm during the robbery, and one of the employees was shot in the abdomen but survived." He also shot "at one of the pizzeria's clients, who was wounded." A week later, the same group of defendants robbed a food stand in San Juan. During that robbery, Rosario "brandished and discharged a firearm during the robbery, and the employee died as a result." Continuing their spree, the group stole a motorcycle from a gas station in Santurce on January 13, 2018. During this carjacking, Rosario and a co-defendant brandished firearms, and Rosario discharged his firearm. The driver of the motorcycle "died as a result of shots that were fired."

The next day, the group robbed a food truck. Multiple members of the group, including Rosario, took aim at three employees of the food truck. Each of the three employees were shot, with one of them later succumbing to his injuries. Rosario and his associates fled the scene with approximately $2,100 from the food truck's cash register. Twenty minutes after robbing the food truck, in the final act of their spree, Rosario and his group

stole a car. One of Rosario's co-defendants shot and killed the owner of that car.

Rosario was arrested eleven days later, on January 25, 2018. Though he was a minor when he committed the crimes, he agreed to be prosecuted as an adult. Following his transfer to said status, he pleaded guilty to a six-count Information, charging him with: interference with commerce by robbery in violation of 18 U.S.C. § 1951 (Counts One, Two, and Five); carjacking in violation of 18 U.S.C. § 2119(3) (Counts Three and Six); and using and carrying a firearm during a crime of violence causing murder in violation of 18 U.S.C. § 924(j)(1) (Count Four). In calculating the total offense level, the parties applied the multiple counts adjustment and added five offense levels for grouped counts under U.S.S.G. § 3D1.4. The parties agreed to request a sentencing range of twenty to thirty-five years, and Rosario also agreed to a waiver of the right to appeal if the court-imposed sentence was 420 months (thirty-five years) or less.

The PSR included information about Rosario's participation in the robberies, carjackings, and resulting murders. It also included information on his challenging childhood. The PSR ultimately set forth a total offense level of 43 and a guideline imprisonment range of life.

Rosario did not object to the PSR and submitted that it adequately reflected his characteristics and background. In his

- 4 -

sentencing memorandum, however, he suggested that the district court consider a downward departure or variance from the guidelines' sentencing range (life). Arguing that the appropriate sentence for his crimes was twenty years (or 240 months), Rosario emphasized his difficult circumstances, including his troubled childhood, during which he suffered abandonment and abuse. He also claimed that he has a diminished IQ and an intellectual disability, such that he was essentially a puppet of his co-defendants. In support of these claims, he included three neuropsychological reports, each of which determined that he has diminished intellectual capacity and severe emotional and intellectual issues, and also had a brutal upbringing. Finally, he represented that his co-defendants entered plea agreements for sentencing exposure between twenty-three and thirty years. While the government did not file a sentencing memorandum, at sentencing it sought a sentence of thirty-five years (420 months).

On October 12, 2022, the district court imposed a sentence of forty years (480 months).[2] In doing so, the court first calculated the guidelines combined offense level to be 47, and then reduced the offense level by three, given that Rosario timely accepted responsibility for his offenses. Because the total

---

[2] The sentence included 240 months on Counts One, Two, and Five, 300 months on Counts Three and Six, to be served concurrently with each other, but consecutively to 180 months as to Count Four.

offense level was higher than 43, it was treated as level 43. See U.S.S.G. ch.5, pt. A, cmt. n. 2 ("An offense level of more than 43 is to be treated as an offense level of 43."). Applying a criminal history category of II, the court found the Guidelines sentencing range to be life imprisonment. It then ultimately varied downward to the sentence imposed. This timely appeal followed.

## II. Legal Standard

On appeal, Rosario presses that his sentence is both procedurally and substantively unreasonable. Our review of a sentencing decision is "bifurcated: we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." United States v. Ayala-Vazquez, 751 F.3d 1, 29 (1st Cir. 2014) (internal quotation marks omitted) (quoting United States v. Leahy, 668 F.3d 18, 21 (1st Cir. 2012)). We "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard," affording due deference to the district court's analysis of the section 3553(a) factors. United States v. Carvajal, 85 F.4th 602, 613 (1st Cir. 2023), cert. denied, 144 S. Ct. 1042 (2024) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). We apply the same

standard in our review of "claimed procedural errors." Ayala-Vazquez, 751 F.3d at 29.

### III. Discussion

### A. Procedural Reasonableness

Procedural errors include a district court's "failing to consider appropriate sentencing factors, predicating a sentence on clearly erroneous facts, or neglecting to explain the rationale for a variant sentence adequately." United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014) (citing United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)). "We review factual findings for clear error, arguments that the sentencing court erred in interpreting or applying the guidelines de novo, and judgment calls for abuse of discretion simpliciter." See Ayala-Vazquez, 751 F.3d at 29 (quoting Leahy, 668 F.3d at 21).

Rosario bases his procedural error claim on the district court's alleged failure to consider certain section 3553(a) factors at sentencing, to wit, (1) his challenging life circumstances and (2) the disparity in sentences between himself and his co-defendants. We consider each argument seriatim, reviewing for abuse of discretion. "[W]e will find an abuse of discretion only when left with a definite conviction that 'no reasonable person could agree with the judge's decision.'" United States v. Maldonado-Peña, 4 F.4th 1, 56 (1st Cir. 2021) (quoting United States v. McCullock, 991 F.3d 313, 317 (1st Cir. 2021)).

"Appellate review of federal criminal sentences is characterized by a frank recognition of the substantial discretion vested in a sentencing court." United States v. Ortiz-Pérez, 30 F.4th 107, 112 (1st Cir. 2022) (quoting United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013)).

### 1. Life Circumstances

Rosario's sentencing memorandum emphasized his tragic life circumstances, including having been "born with a condition that disgusted both [of] his parents."[3]  It also included details of Rosario's "verbal abuse and maltreatment" at the hands of his mother.  Aside from his emotional hardships, Rosario also "suffers from intellectual disability."  As such, in his sentencing memorandum he requested a diminished capacity departure under U.S.S.G. § 5K2.13 and presented the results of multiple psychiatric evaluations in support of this request.

At sentencing, the district court stated that it "ha[d] . . . considered the other sentencing factors set forth in Title 18 United States Code Section 3553(a)," as well as the PSR. It further stated that it "ha[d] considered Mr. Rosario's age and mental and emotional condition at the time of the offense as relevant in determining his sentence."  These conditions included that "[h]e was 16 [sic] years old when he committed the offenses,

---

[3] Rosario was born with ambiguous genitalia and severe hypospadias.

- 8 -

and perhaps lacked maturity and a sense of responsibility. Mr. Rosario's longstanding history of abuse and neglect by his caregivers, his physical and mental conditions, which were mostly untreated, led him to be reckless and impulsive, but that recklessness and impulsiveness culminated in the death of at least four persons."[4] The court ultimately concluded that the parties' requested sentences did not "reflect[] the seriousness of the offenses, or promote[] respect for the law, or protect[] the public . . . , [or] . . . address the issues of deterrence and punishment."

On appeal, Rosario argues that the district court failed to adequately account for those potentially mitigating factors. He insists that these factors were ignored by the sentencing court, resulting in a procedural error. The government, on the other hand, counsels affirmance. Highlighting the district court's consideration of Rosario's personal characteristics, the government posits that there was no procedural error. The government points out that the district court "explicitly considered [Rosario's] age and mental and emotional condition, among other mitigating factors, and, as a result, issued a downwardly variant sentence." The government also notes Rosario's

---

[4] The district court inadvertently stated that Rosario was sixteen years old at the time of the crimes, but later corrected itself in observing he was fifteen years old.

behavior while incarcerated, including the fact that he threatened a custodial officer.[5]

The judge's "explicit statement" that he had considered the section 3553(a) factors "is a point in favor of . . . finding that the judge weighed each of [the section 3553(a)] factors." See Ayala-Vazquez, 751 F.3d at 31 (citing United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011)). Moreover, the district court ultimately downwardly varied (from the guideline range of life imprisonment) and the sentence is, thus, entitled to a presumption of reasonableness. See United States v. deJesus, 6 F.4th 141, 150 (1st Cir. 2021) (explaining the "steep uphill climb" which exists where "a defendant contests the length of a downwardly variant sentence"); see also United States v. Concepcion-Guliam, 62 F.4th 26, 36 (1st Cir. 2023) (explaining that when "a defendant challenges a downwardly variant sentence, he must carry a particularly heavy burden to show that the length of the sentence imposed is unreasonable").

Given the downward variance and the district court's analysis, Rosario has not met his burden of showing that there was a procedural error. See id. It is clear from the sentencing

---

[5] During that incident, Rosario told the officer "when we catch you in the street, we will kill you, we have balls to kill, if we do not assault you here, for sure in the streets we will kill you, because we have real balls to kill." Rosario was convicted of a misdemeanor under the Puerto Rico Penal Code and received a six-month sentence.

transcript that the court looked at Rosario's age, "longstanding history of abuse and neglect by his caregivers," and his "physical and mental conditions, which were mostly untreated."  See, e.g., United States v. García Pérez, 9 F.4th 48, 52 (1st Cir. 2021) (disagreeing that the court failed to consider youth as a mitigating factor when it expressly mentioned his age).  Rosario's sentencing memo -- which the court signaled it had read -- detailed the mitigating factors, and Rosario discussed them at the sentencing hearing.  Moreover, the PSR -- which the court signaled it had reviewed -- also provided a detailed discussion of Rosario's background.  See United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012) ("The potentially mitigating factors [the defendant] identifies on appeal were thoroughly discussed in the presentence report; that the district court did not explicitly mention them during the sentencing hearing suggests they were unconvincing, not ignored.").

Just because "the sentencing court chose not to attach to certain of the mitigating factors the significance [Rosario] thinks they deserved does not make the sentence unreasonable." See Clogston, 662 F.3d at 593.  Here, where the court explicitly mentioned all of the above factors -- and also said "[b]ut" he caused four deaths (and had recapped the details of the violent crime spree already), and then doled out a downwardly variant sentence -- it seems apparent that the court appropriately

- 11 -

grappled with the mitigating and aggravating factors, fulfilling its obligation.  Accordingly, we find no procedural error as to the district judge's review of the section 3553(a) factors.

### 2. Sentencing Disparity

We next address Rosario's disparity argument.  "In fashioning an appropriate sentence, judges are directed by statute to consider 'the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.'"  United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015) (quoting 18 U.S.C. § 3553(a)(6)).  While section 3553(a)(6) is "primarily aimed at national disparities," a sentence also may be "unreasonable because of the disparity with the sentence given to a codefendant."  Id. (first quoting United States v. Rivera-Gonzalez, 626 F.3d 639, 648 (1st Cir. 2010); and then quoting United States v. Reverol–Rivera, 778 F.3d 363, 366 (1st Cir. 2015)).

Rosario -- both in his sentencing memorandum below and now in his briefing on appeal -- mentions that, at the time of the crimes, each of his co-defendants were adults, while he was fifteen years old.  Rosario claims that his co-defendants "harassed and taunted him because of his physical and mental conditions" and "enticed and promoted his participation and violence."  By the time sentencing for all of these defendants had concluded, Rosario's was ultimately the highest, with each of his

co-defendants receiving lower sentences.[6]  Rosario sees this as a "failure to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, as required by 18 U.S.C § 3553(a)(6)."[7]

The government, in turn, asserts that Rosario's claim as to disparity is "unavailing."  Citing our decision in Reyes-Santiago, 804 F.3d at 467, the government presses that it is the defendant's duty to "compare apples to apples."  Rosario has not only failed in that obligation, the government contends, but he could not possibly meet it.  The government submits there are key differences between Rosario and his co-defendants -- such as the fact that they were sentenced by different judges and played different roles in the crimes -- and that those differences foil Rosario's disparity argument.

"To present '[a] well-founded claim of disparity,' a defendant must compare apples to apples."  Id. (quoting United States v. Mateo-Espejo, 426 F.3d 508, 514 (1st Cir. 2005)).  And, if "material differences between the defendant and the proposed comparator suffice to explain the divergence," a sentencing

---

[6] Rivera-Moyet was sentenced to 216 months, Muñoz-Nieves was sentenced to 360 months, Edwin O. Gómez-Caraballo was sentenced to 312 months, and Daniel Dennes-Garcia was sentenced to 178 months. Again, Rosario was sentenced to 480 months.

[7] Rosario's briefing appears to cast his disparity argument under the procedural -- rather than the substantive -- umbrella. Accordingly, we address it as a procedural challenge.

disparity claim is unlikely to prevail. United States v. Demers, 842 F.3d 8, 15 (1st Cir. 2016). A defendant "is not entitled to a lighter sentence merely because his co-defendants received lighter sentences." United States v. Dávila-González, 595 F.3d 42, 50 (1st Cir. 2010).

Here, Rosario hasn't provided the necessary information to determine whether he and his co-defendants were identically situated or were, instead, materially different. See United States v. Candelario-Ramos, 45 F.4th 521, 526 (1st Cir. 2022) (noting a disparity claim failed, in part, when appellant failed to provide relevant information to determine whether co-defendants were relevant comparators). Rosario does not offer up any details for comparison other than listing some co-defendants' sentences and contending those individuals were adults who influenced him. He also says that those adults didn't suffer the same ailments as he, and that they received more favorable plea offers. But "[m]erely pointing to a [co-defendant]'s sentence . . . does not prove the existence of an impermissible sentencing disparity." See United States v. Nuñez, 840 F.3d 1, 7 (1st Cir. 2016).

Rosario tells us nothing about his proposed comparators' criminal histories, the specific circumstances of their plea agreements, or the particularities of their crime-spree conduct as compared to Rosario's. See Candelario-Ramos, 45 F.4th at 526 (noting that, without that information, the court on appeal

couldn't determine whether the co-defendants were relevant comparators); Demers, 842 F.3d at 15. In addition, the co-defendants he compares himself to were sentenced by a different judge. See Candelario-Ramos, 45 F.4th at 526 ("Two of the co-defendants . . . were sentenced by a different judge . . . , a fact that makes [their] sentence[s] . . . less relevant."). We also note that, at the time of Rosario's sentencing, three of his co-defendants were not yet sentenced. See United States v. Bishoff, 58 F.4th 18, 26 (1st Cir. 2023) (noting "the court could not have explained the reasons for the disparity during [the defendant's] sentencing hearing because [the defendant] was sentenced five months before [the co-defendant] and, at that point, there was no disparity to consider or justify"). Rosario alternatively argues that the district court committed error when it "did not even bother to assess the sentencing disparity issue." But he does not point us to case law to support the idea that the sentencing court's purported failure to explicitly address disparity was error where three of his co-defendants were not yet sentenced and where they were ultimately sentenced by a different judge. See id.; Candelario-Ramos, 45 F.4th at 526.[8]

---

[8] For the one co-defendant who had been sentenced at the time of Rosario's sentencing, Gomez-Caraballo, Rosario did not present enough information for the apples-to-apples comparison we outline above. See Reyes-Santiago, 804 F.3d at 467.

Thus, on this issue, we find no abuse of discretion by the district judge. See Carvajal, 85 F.4th at 613.

**B. Substantive Reasonableness**

Having found no procedural error, we next review Rosario's argument that his sentence is substantively unreasonable. "[T]he linchpin of a substantively reasonable sentence is a plausible sentencing rationale and a defensible result." Ayala-Vazquez, 751 F.3d at 32 (alteration in original) (quoting United States v. Pol-Flores, 644 F.3d 1, 4-5 (1st Cir. 2011)). Rosario "must adduce fairly powerful mitigating reasons and persuade [this Court] that the district judge was unreasonable in balancing pros and cons." Id. at 32-33 (alteration in original) (quoting United States v. Batchu, 724 F.3d 1, 14 (1st Cir. 2013)).

There is no clear delineation between Rosario's claims of procedural error and his claims of substantive error. That said, Rosario's contention on substantive error appears to be that the district court "exceeded the bounds of permissible choice" and "fail[ed] to account for factors that should have received significant weight." He -- again -- recites those factors which he believes deserved more attention, including his IQ, his age at the time the crimes were committed, and his health conditions. For these reasons, he believes that the district court committed substantive error.

The government, in turn, posits that the district court indeed discussed the section 3553(a) factors, including Rosario's "age, education, [and] employment history." It further notes that "[h]aving weighed all the aggravating and mitigating factors, the court agreed with the parties that a downward variance was appropriate but disagreed with the extent of the proposed variances." Hence, the government says, Rosario has not met the "particularly heavy" burden articulated in Concepcion-Guliam, 62 F.4th at 36. We agree.

For his substantive challenge, Rosario relies solely on the district court's alleged failure to account for various factors and alleged granting of an unreasonable amount of weight to other factors. He also says that "[e]ven if the court followed the proper procedures, the case can still be substantively unreasonable if the district court imposed a sentence that is 'greater than necessary.'" The district court appropriately pointed to the seriousness of Rosario's offenses, as well as the "reckless[ness] and impulsiv[ity]" of his actions. And, as the government notes, Rosario made violent threats (against a custodial officer) while incarcerated. Thus, the district court appropriately considered the section 3553(a) factors, such that the sentence is substantively reasonable and there was no abuse of the judge's "substantial discretion." See Ortiz-Pérez, 30 F.4th at 112 (quoting Flores-Machicote, 706 F.3d at 20).

- 17 -

Rosario also points to Miller v. Alabama, 567 U.S. 460 (2012), in arguing that the district court imposed a sentence that is disproportionate and harsh given Rosario's age at the time of the offense.  He argues that Miller emphasized "the need to take into account the age and maturity of the offender at the time of the crime."  Rosario did not advance this particular argument below and it is, therefore, unpreserved and subject to plain-error review (at most).  See United States v. Feliciano-Candelario, 128 F.4th 5, 16 (1st Cir. 2025) (citing United States v. Aponte-Colón, 104 F.4th 402, 415 (1st Cir. 2024)).  That said, under any standard of review, Rosario's arguments on this issue are unavailing.  As we have previously explained, the Supreme Court's Miller decision "invalidated only mandatory life-without-parole sentences for juveniles."  United States v. Gonzalez, 981 F.3d 11, 18 (1st Cir. 2020) (citing Miller, 567 U.S. at 489).  As the government notes, Rosario did not receive such a sentence and, so, his Miller-related arguments are unavailing.[9]

---

[9] Rosario also cites Atkins v. Virginia, 536 U.S. 304 (2002), for the proposition that his disabilities result in a decreased level of moral culpability.  Atkins dealt with the principle of gross disproportionality in the context of death penalty cases.  See United States v. Polk, 546 F.3d 74, 76 (1st Cir. 2008) (citing Atkins, 536 U.S. at 318).  Rosario does not develop this argument, so we deem it waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Because we find no procedural or substantive error, we also reject Rosario's argument that a "series of errors" which were "individually harmless" cumulatively amounted to prejudice warranting reversal.

### III. Conclusion

For the foregoing reasons, we **<u>affirm</u>** the appellant's sentence.