# United States Court of Appeals
## For the First Circuit

---

Nos. 12-2111
    13-1622

UNITED STATES OF AMERICA,

Appellee,

v.

RONALD MERRITT,

Defendant, Appellant.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

---

Before

Lynch, Chief Judge,
Selya and Kayatta, Circuit Judges.

---

Robert S. Sinsheimer, with whom Lauren Thomas and Sinsheimer & Associates were on brief, for appellant.
Dina Michael Chaitowitz, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

---

June 16, 2014

---

**SELYA, Circuit Judge.** This is the second in a matched set of bookend cases. In the earlier case, we rejected the appeal of Larry Wilkins to set aside his conviction and sentence because of a notorious scandal that shook public confidence in a Massachusetts state testing laboratory. See Wilkins v. United States (Wilkins II), ___ F.3d ___ (1st Cir. 2014) [No. 13-1637, slip op. at 14].

This time around, the appellant is Wilkins's accomplice, Ronald Merritt. Although the appellant enjoys a more lenient standard of review, we conclude that the court below did not abuse its discretion in refusing to allow him to withdraw his guilty plea. We also conclude that the appellant's sentence is substantively reasonable.

## I.

### Background

These appeals arise out of the same fateful transaction that we described in Wilkins II. We outline the structure of this transaction. On April 23, 2011, an undercover police officer posing as a customer in search of a fix approached the appellant in a Boston neighborhood reputed to be a haven for drug dealers. The appellant agreed to make the sale and, after receiving payment, crossed the street, gave the cash to his supplier (Wilkins), and returned to give the undercover officer a bag of what appeared to be crack cocaine. These events are described in greater detail in

Wilkins II, ___ F.3d at ___ [slip op. at 2-4], and we assume the reader's familiarity with that opinion.

Wilkins and the appellant were jointly indicted for possession of crack cocaine with intent to distribute. See 21 U.S.C. § 841(a)(1). After initially maintaining his innocence, the appellant entered a straight guilty plea (that is, a guilty plea unaccompanied by a written plea agreement). The government, however, made clear that it would recommend a below-the-range sentence.

At the change-of-plea hearing, the government's version of events prominently featured the fact that the substance involved in the street corner transaction was crack cocaine. The appellant admitted the truth of that account. The district court accepted the guilty plea and scheduled the disposition hearing for September 7, 2012.

Roughly a week before the scheduled sentencing date, news broke of problems associated with Annie Dookhan, a chemist at the William A. Hinton State Laboratory Institute. See Wilkins II, ___ F.3d at ___ [slip op. at 4-5]. Because Dookhan was the chemist who had certified that the substance trafficked in the appellant's case was crack cocaine, the appellant's counsel told the sentencing court that the news (which at that point was limited to reports that Dookhan had breached laboratory protocols) would likely be the basis of a future effort to rescind his plea. Despite this

foreshadowing, the court and the parties agreed to proceed with sentencing, reserving to the appellant the right to move to withdraw his plea at a later date. The court then imposed an 84-month term of immurement, which was appealed.

In the ensuing weeks, a state police investigation revealed the full extent of Dookhan's perfidy, including her deliberate contamination of certain samples and her certification of others without chemical testing. Although no evidence linked any of these pernicious practices directly to the appellant's case, he nonetheless moved to withdraw his plea. See Fed. R. Crim. P. 11(d)(2)(B).

The district court heard arguments on this motion in tandem with arguments on Wilkins's petition to set aside his conviction and sentence under 28 U.S.C. § 2255. In an omnibus rescript, the court denied relief to both men. See United States v. Wilkins (Wilkins I), 943 F. Supp. 2d 248, 259 (D. Mass. 2013). Pertinently, the court concluded that the appellant had not shown that Dookhan's misconduct was material to his guilty plea and, therefore, he lacked any founded basis for contending that his plea was involuntary. See id. at 258. The appellant appealed from this order, and we consolidated his two appeals.

# II.

## Analysis

Before us, the appellant advances two claims of error. We treat them separately.

### A.

#### Plea Withdrawal

We start with the appellant's claim that the district court erred in denying his request to withdraw his guilty plea. The "fair and just reason" rubric usually applies only to plea-withdrawal motions made before sentencing. See Fed. R. Crim. P. 11(d)(2). Here, however, the parties agree that because the appellant reserved his right to seek such a withdrawal prior to sentencing, the "fair and just reason" standard applies (not the more stringent standard for collateral relief described in Wilkins II, ___ F.3d at ___ [slip op. at 6-7]). The district court accepted this agreement, and so do we.

The "fair and just reason" standard for plea withdrawal derives from Federal Rule of Criminal Procedure 11(d)(2)(B). Under this rule, a court may permit such a withdrawal if "the defendant can show a fair and just reason for requesting" that relief. Although this gives a defendant the benefit of a permissive standard, it does not endow him with an unfettered right to retract a guilty plea. See United States v. Mercedes Mercedes, 428 F.3d 355, 359 (1st Cir. 2005).

-5-

Mindful that a district court's close relationship to the plea process affords it a superior coign of vantage, we review a district court's denial of a motion to withdraw a plea solely for abuse of discretion. See United States v. Gonzalez-Vazquez, 34 F.3d 19, 22 (1st Cir. 1994). The devoir of persuasion rests with the movant. See United States v. Parrilla-Tirado, 22 F.3d 368, 371 (1st Cir. 1994).

In determining whether a defendant who seeks to retract his plea has carried his burden, an inquiring court must consider the totality of the circumstances. See Mercedes Mercedes, 428 F.3d at 359. This inquiry often gives particular weight to four factors. A typical starting point is to ascertain whether the plea was voluntary, intelligent, and informed when tendered. See United States v. Gates, 709 F.3d 58, 68 (1st Cir.), cert. denied, 134 S. Ct. 264 (2013). "From that starting point, the inquiry customarily should expand to factors such as the strength of the reasons proffered by the defendant as a basis for withdrawing his plea, the timing of the motion, and the force of any assertion of legal innocence." Id. at 68-69. If the court concludes that the balance of all the relevant factors tilts in favor of the defendant, then — and only then — should the court proceed to factor in the prejudice (if any) that the government would suffer were the court to allow the motion to withdraw. See United States v. Doyle, 981 F.2d 591, 594 (1st Cir. 1992).

-6-

Against this backdrop, the appellant strives to persuade us that his guilty plea was involuntary and uninformed because he had no knowledge of the Dookhan scandal when he tendered it. We are not convinced that the district court abused its discretion in concluding otherwise.

The district court supportably characterized the evidence of both Wilkins's and the appellant's guilt as "overwhelming." Wilkins I, 943 F. Supp. 2d at 258. In passing upon Wilkins's appeal, we agreed. See Wilkins II, ___ F.3d at ___ [slip op. at 9-11]. While the basis for that characterization is more fully explained in those previous opinions, we summarize it here.

The appellant was the retailer in a prototypical street corner drug "buy." In addition to his role in the transaction, he had on his person what appeared to be another bag of crack cocaine (which the appellant, when arrested, accused the undercover officer of planting). His supplier (Wilkins) had a stockpile of similar bags, one of which field-tested positive for crack cocaine. Thirteen other bags from that stockpile, never touched by Dookhan, were subsequently tested by a state police chemist and yielded uniformly positive results. See id. [slip op. at 9-10].

This evidence strongly suggests the appellant's guilt — and none of it depends in any way on Dookhan. We think it follows that the evidence of Dookhan's skullduggery was not enough to render the appellant's guilty plea involuntary or uninformed.

The appellant balks at this conclusion. To begin, he points to his lawyer's affidavit, which asserts that if the lawyer had known of the wide-ranging nature of Dookhan's misconduct, he would not have recommended that the appellant plead guilty. In the appellant's view, this self-serving affidavit trumps any judicial appraisal of the strength of the government's case. We do not agree.

In the plea-withdrawal context, an objective standard governs the inquiry into materiality. See Ferrara v. United States, 456 F.3d 278, 294 (1st Cir. 2006). Thus, the subjective, post hoc assertions of defense counsel do not possess decretory significance. See, e.g., Hill v. Lockhart, 474 U.S. 52, 59-60 (1985); Miller v. Angliker, 848 F.2d 1312, 1323 (2d Cir. 1988). As opposed to blind subservience to defense counsel's affidavit, the task confronting the district court demanded an objective analysis, informed by the effect, if any, that Dookhan's misconduct was likely to have had on the appellant's chances at trial. That is exactly how the court below approached this matter.[1]

In Wilkins II, we explained in some detail why Dookhan's wrongdoing did not give rise to a viable defense. See ___ F.3d at

---

[1] The district court's passing remark that it was "[r]elying on its own experience," Wilkins I, 943 F. Supp. 2d at 258, does not suggest the contrary. Judges are appointed largely on the basis of their knowledge and experience, and this turn of phrase served merely to emphasize that the weight of judicial experience informed the court's objective analysis.

___ [slip op. at 9-13]. What we said in that regard applies equally to the appellant. But in an effort to blunt the force of this explanation, the appellant contends that Dookhan's perfidy paved the way for a defense that was available to him and not to his accomplice. He notes that even though testing by the second chemist revealed uniformly positive results for the virgin bags drawn from Wilkins's stockpile,[2] none of those bags was attributable to him. Thus, he might have been able to assert that his involvement was merely in a counterfeit drug deal.

We think that the district court did not abuse its discretion in concluding that this phantasmagoric gambit would not have been worth a roll of the dice. There is not a sliver of evidence that anyone connected with this transaction ever contemplated a sham sale, and the fact that Wilkins's stockpile (from which the bag sold by the appellant was taken) consistently tested positive for cocaine argues persuasively that only genuine drugs were being trafficked that day. Moreover, the district court supportably found that such a sham was "barely within the rim of the remotely possible," inasmuch as "any sale of a sham drug [would have been] extremely dangerous to" Wilkins qua supplier. See Wilkins I, 943 F. Supp. 2d at 258 n.11.

---

[2] For the benefit of the curious reader, we note that the circumstances of this second round of testing are fully described in Wilkins II, ___ F.3d at ___ [slip op. at 10], and in Wilkins I, 943 F. Supp. 2d at 252-53.

To cinch matters, the appellant has never maintained that this counterfeit drugs scenario (or for that matter any other exonerative tale) has any grounding in reality. To the contrary, the appellant admitted his factual guilt at the change-of-plea hearing — an admission from which he has never retreated. Such a set of circumstances militates powerfully against reversing a trial court's denial of a plea-withdrawal motion. See United States v. Torres-Rosa, 209 F.3d 4, 9 (1st Cir. 2000); Gonzalez-Vazquez, 34 F.3d at 23.

To be sure, one important factor — timing — counsels in the appellant's favor. The appellant raised the issue of Dookhan's misconduct promptly and only delayed moving to withdraw the plea with the government's acquiescence.[3]

But timing alone is not enough to tip the scales. Even though, prior to sentencing, "the district court should liberally allow withdrawal of guilty pleas for any fair and just reason," United States v. Mescual-Cruz, 387 F.3d 1, 6 (1st Cir. 2004) (internal quotation marks omitted), liberal allowance is not to be confused with automatic allowance. The words "fair and just reason" must mean something more than that a defendant has had second thoughts about his plight. We cannot fault the court below

---

[3] Of course, the appellant derived twin benefits from the delay. It gave him a chance both to learn the gory details of the Dookhan scandal and to preview his sentence before deciding whether to press ahead with an effort to withdraw his plea.

-10-

for declining to allow a plea withdrawal where, as here, the record supports a finding that Dookhan's transgressions were not material to the appellant's guilty plea.

In a last-ditch endeavor to change the trajectory of the debate, the appellant invokes the ideal of "fundamental fairness" in the plea-bargaining context. But this exhortation is offered at so high a level of generality that it lacks any real bite, and the appellant has not given us any plausible reason to believe that his decision to plead guilty was tainted by unfairness. Rule 11(d)(2)(B) itself accounts for fairness concerns when an appellant seeks to withdraw his plea — and the district court applied the strictures of that rule meticulously.

That ends this aspect of the matter. We hold that the district court acted within the encincture of its discretion when it found that the appellant had failed to proffer a fair and just reason in support of his motion to withdraw his plea. The order denying that motion is, therefore, unimpugnable.

## B.

### Reasonableness of Sentence

We turn now to the appellant's second claim of error: his challenge to the reasonableness of his sentence. Due to an overabundance of prior convictions, mostly for domestic violence crimes, the appellant was classified as a career offender. See USSG §4B1.1. This classification, in combination with his total

offense level, yielded a guideline sentencing range (GSR) of 151 to 188 months. At sentencing, the district court varied downward from the GSR and imposed an 84-month incarcerative term.

The appellant assigns error to this sentencing determination. Our standard of review is familiar: we review claims of sentencing error for abuse of discretion. See Gall v. United States, 552 U.S. 38, 51 (2007). Our analysis proceeds in accordance with a two-step pavane. We first resolve any claims of procedural error and, if no such error appears, we then inquire into the substantive reasonableness of the challenged sentence. See id.; United States v. King, 741 F.3d 305, 307-08 (1st Cir. 2014).

The appellant's challenge is narrowly focused. He does not contest the district court's guideline calculations. By the same token, he eschews any claim of procedural error. Rather, he complains about the ultimate sentencing determination, arguing that the district court gave too much weight to his criminal history. Specifically, he argues that the court failed to take properly into account that the vast majority of his 26 prior convictions did not involve drugs and that, in all events, he was well rehabilitated.

This plaint contains more cry than wool. "The linchpin of our review for substantive reasonableness is a determination about whether the sentence reflects a plausible . . . rationale and a defensible result." King, 741 F.3d at 308 (alteration in

original) (internal quotation marks omitted).  There is nothing implausible or indefensible about the weight given by the district court to the appellant's lengthy criminal history.  Both Congress and the Sentencing Commission have made pellucid that career offender designations are serious business, not to be treated lightly.  See 28 U.S.C. § 994(h); USSG §4B1.1, comment. (backg'd.).  Here, the court carefully evaluated the appellant's record of convictions, paying attention (at defense counsel's urging) to both the nature of the appellant's past crimes and his profession of rehabilitation.  That the court was not as impressed by these palliative arguments as the appellant might have hoped does not itself signal an abuse of discretion.  See United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011).  After all, a sentencing court has the right — indeed, the duty — to make evaluative judgments.  For aught that appears, the court below exercised this authority in a reasonable and responsible way.

If more were needed — and we doubt that it is — the sentence fell well below the bottom of the appellant's properly calculated GSR.  "It is a rare below-the-range sentence that will prove vulnerable to a defendant's claim of substantive unreasonableness."  King, 741 F.3d at 310.  Given the

-13-

circumstances, this case falls within that general rule, not within the long-odds exception to it.[4]

## III.

### Conclusion

We need go no further.  As in <u>Wilkins II</u>, "[w]e write without attempting to lay down any broad rule to govern all Dookhan-related cases."  ___ F.3d at ___ [slip op. at 14].  The Dookhan scandal, though disgraceful, does not open the door for the appellant to mount any promising defense and, given the thorough change-of-plea colloquy and the potent evidence of his guilt, the district court did not abuse its discretion in finding no fair and just reason for allowing the appellant to withdraw his guilty plea. Nor did the sentence imposed by the court transcend the realm of reasonableness.

**Affirmed.**

---

[4] The appellant laments the ostensible unfairness of a seven-year sentence for his role in peddling less than a tenth of an ounce of crack cocaine.  But the appellant's focus is out of kilter: the duration of the sentence is largely a function of the appellant's lengthy criminal history, which happened to culminate in a small-time drug deal.  Viewed in this refocused light, the sentence appears neither unfair nor unreasonable.