# United States Court of Appeals
## For the First Circuit

No. 20-1988

UNITED STATES OF AMERICA,

Appellee,

v.

JOSUE CANDELARIO-RAMOS, T/N JOSUE CANDELARIA-RAMOS, A/K/A POCHO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Thompson and Howard, Circuit Judges,
and Woodcock, District Judge.[*]

Fernando O. Zambrana Avilés, with whom Colon Serrano Zambrana, LLC was on brief, for appellant.
Maarja T. Luhtaru, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and David C. Bornstein, Assistant United States Attorney, were on brief, for appellee.

August 16, 2022

---

[*] Of the District of Maine, sitting by designation.

**HOWARD**, **Circuit Judge**.  Appellant Josue Candelaria-Ramos[1] appeals his mandatory minimum 60-month sentence.  Candelaria previously served multiple sentences for related conduct and believes that he should have been credited for that time.  Candelaria also claims that the disparity between his sentence and those of several co-defendants warrants a lower sentence.  But Candelaria knowingly and voluntarily agreed to an appeal waiver, the enforcement of which does not result in a miscarriage of justice.  We therefore must dismiss his appeal.

## I.

The parties do not dispute the underlying facts, which we draw from the plea agreement, the sentencing hearing transcript, and the uncontested portions of the presentence investigation report ("PSR").  See United States v. Gomera-Rodríguez, 952 F.3d 15, 16 (1st Cir. 2020).  In July 2017 a grand jury charged Candelaria, alongside twenty-six co-defendants, for working as a seller in a drug operation based out of two public housing projects in Utuado, Puerto Rico.  Candelaria was charged with one count of conspiring to possess with intent to distribute controlled substances and four counts of possession with intent to distribute heroin, cocaine, cocaine base, and marijuana.

---

[1] Although appellant's name appears on the docket as "Candelario-Ramos," the parties refer to him as "Candelaria-Ramos" and his counsel clarified at the sentencing hearing that this is his true surname.

In February 2019, pursuant to a written agreement, Candelaria pleaded guilty to one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846, and 860. As part of the plea agreement Candelaria stipulated to possessing at least 2 but less than 3.5 kilograms of cocaine, resulting in a mandatory minimum of 60 months' imprisonment. In exchange, the government agreed to dismiss the remaining counts and recommend a sentence of up to 71 months' imprisonment. Candelaria agreed to waive his appeal rights "if the imprisonment sentence imposed by the [district court] [was] 71 months or less."

The plea agreement also stated that three of Candelaria's prior Puerto Rico convictions qualified as "relevant conduct," and that his sentence would be imposed in accordance with U.S.S.G. §§5G1.3[2] and 5K2.23.[3] As relevant conduct, the

---

[2] U.S.S.G. §5G1.3(b) requires that: if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows: (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment."

[3] U.S.S.G §5K2.23 provides that: "A downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of §5G1.3 . . . would have provided an adjustment had that completed term of imprisonment been undischarged at the time of

parties identified two violations of the Puerto Rico Controlled Substances Act and one violation of the Puerto Rico Penal Code. Candelaria served his sentences for those convictions concurrently for a total term of twenty months and twenty days, which ended in January 2017.

Candelaria's amended PSR calculated his criminal history as Category III with a total offense level of 25, resulting in a sentencing range of 70 to 87 months. At his sentencing hearing in September 2020, Candelaria requested a term of 60 months' imprisonment minus the twenty months and twenty days he had previously served in the custody of the Commonwealth on his relevant conduct. The government explained that it had not been aware of "the Sentencing Commission's opinion in terms of credit that can and cannot be provided" and had "negotiated all the pleas under the [mistaken] understanding [that the co-defendants] were going to receive credit for the relevant conduct cases." In response, the court explained that "whatever credit [Candelaria] has, [the court] cannot go under five years," and confirmed that Candelaria's counsel understood that the court could not "go under the statutory minimum sentence." Notwithstanding the parties'

---

sentencing for the instant offense. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense."

apparent misunderstanding in reaching the plea agreement, Candelaria did not move to withdraw his guilty plea.

After reviewing the relevant sentencing factors, the court departed downward pursuant to U.S.S.G §5K2.23 but stopped at the mandatory minimum, sentencing Candelaria to 60 months' imprisonment and eight years of supervised release. At the end of the hearing Candelaria objected to his sentence "on substantive and on procedural grounds." His timely appeal followed.

## II.

We enforce an appeal waiver "if the defendant knowingly and voluntarily agree[d] to its terms and enforcement would not result in a miscarriage of justice." United States v. Santiago, 947 F.3d 1, 2 (1st Cir. 2020) (citing United States v. Teeter, 257 F.3d 14, 24-26 (1st Cir. 2001)); see United States v. Staveley, No. 21-1842, 2022 WL 3040615, at *3 (1st Cir. Aug. 2, 2022) (describing the contours of appeal waiver doctrine). Candelaria does not dispute that he knowingly and voluntarily agreed to the waiver. Thus we need only consider whether the waiver creates a miscarriage of justice. Id. "The miscarriage-of-justice exception is reserved for 'egregious cases,' is used 'sparingly,' and 'requires a strong showing of innocence, unfairness, or the like.'" Id. at 3 (internal citations omitted). Examples include "the use of 'constitutionally impermissible factors'" such as race

or ethnicity at sentencing or "the imposition of a 'sentence exceeding the maximum penalty permitted by law.'" Id. at 3 n.2 (quoting Teeter, 257 F.3d at 25 nn.9-10). "To successfully invoke the miscarriage of justice exception, a 'garden-variety error will not suffice,' rather there must be, 'at a bare minimum, an increment of error more glaring than routine reversible error.'" United States v. Santiago, 769 F.3d 1, 8 (1st Cir. 2014) (quoting United States v. Chambers, 710 F.3d 23, 31 (1st Cir. 2013)).

Candelaria states only that enforcing his appeal waiver "would work as a miscarriage of justice" because "he is launching a serious constitutional challenge to the limitations imposed by 18 U.S.C. § 3584" and U.S.S.G. §5G1.3, which "he believes is [a matter] of first impression."[4] Candelaria also asserts that he is "raising serious questions related to disparity in sentencing." But Candelaria does not explain why the seriousness of either his constitutional or disparity claim creates a miscarriage of

---

[4] Candelaria also states that "[t]his is buttressed by the fact that both the United States and the Defense worked out a plea agreement under the impression that the Court could provide Candelaria with a term of imprisonment below the mandatory minimum." But, as discussed above, Candelaria did not move to withdraw his plea agreement. Regardless, Candelaria does not further develop this argument and has thus waived it. See Acevedo-Garcia v. Monroig, 351 F.3d 547, 561 (1st Cir. 2003) ("We have steadfastly deemed waived issues raised on appeal in a perfunctory manner, not accompanied by developed argumentation." (quoting Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 27 (1st Cir. 2003))).

justice.  Candelaria has thus waived this argument.  See Acevedo-Garcia, 351 F.3d at 561.

Even if Candelaria had not waived this argument, there is no miscarriage of justice here.  Considering first his constitutional claim, Candelaria argues that "the distinction between discharged and undischarged terms of imprisonment in Guideline §5G1.3 and 18 U.S.C. § 3584, in its application to Candelaria, who is subject to a mandatory minimum sentence and who completed serving a discharged state sentence for relevant conduct, is arbitrary and violates his Fifth Amendment's due process rights."[5]  Because Candelaria did not raise this argument before the district court, we review only for plain error. See United States v. Blewitt, 920 F.3d 118, 123 (1st Cir. 2019) (citing United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

"Plain error is a formidable standard of review, which requires that an appellant demonstrate: '(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired

---

[5] 18 U.S.C. § 3584 gives sentencing courts discretion to determine whether sentences will run concurrently or consecutively to other sentences they impose or sentences imposed in other proceedings.  18 U.S.C. § 3584(a); see also Setser v. United States, 566 U.S. 231, 235-39 (2012).  Aside from noting that sentencing courts' discretion in applying U.S.S.G. §5G1.3 "flows from 18 U.S.C. § 3584(a)," Candelaria does not further explain how § 3584(a) is arbitrary or violates the Constitution.  He has thus waived this argument.  See Acevedo-Garcia, 351 F.3d at 561.

the fairness, integrity, or public reputation of judicial proceedings.'"  Id. (quoting Duarte, 246 F.3d at 60).  But Candelaria "makes no attempt to show how his [constitutional] claim satisfies the demanding plain-error standard--his brief fails to even mention plain error, let alone argue for its application here."  United States v. Cruz-Ramos, 987 F.3d 27, 40 (1st Cir. 2021) (citing Fed. R. App. P. 28(a)(8)(A)) (emphasis in original).  His failure to do so "waives this claim."  Id.; see United States v. Galíndez, 999 F.3d 60, 68 (1st Cir. 2019).[6]

In any event, there was no plain error.  There are only two ways for a court to sentence below a statutory mandatory minimum.  First, if a defendant provides substantial assistance the government may move for a below-minimum sentence pursuant to 18 U.S.C. § 3553(e) or Federal Rule of Criminal Procedure 35(b).  See United States v. Ramirez, 252 F.3d 516, 518 n.2 (1st Cir. 2001); U.S. Sentencing Comm'n, Overview of Mandatory Minimum Penalties in the Federal Criminal Justice System (July 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170711_Mand-Min.pdf, at

---

[6] Candelaria does try to make a plain-error argument in his reply brief.  But "[w]e have held, with a regularity bordering on the monotonous, that issues advanced for the first time in an appellant's reply brief are deemed waived."  Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 299 (1st Cir. 2000) (citations omitted).

18-19.  Second, the court may sentence below a mandatory minimum if a defendant has been convicted of a qualifying drug trafficking offense and meets the requirements of the "safety valve" provision in 18 U.S.C. § 3553(f).  See Ramirez, 252 F.3d at 518 n.2; U.S. Sentencing Comm'n, Overview of Mandatory Minimum Penalties in the Federal Criminal Justice System.  Candelaria did not seek relief through these avenues, nor does he now argue that they apply.  Any potential sentencing adjustment available to him thus bottomed out at the mandatory minimum, which Candelaria received.

Some circuits have credited undischarged sentences towards mandatory minimums, "so long as the total of the time served and the reduced federal sentence equals or exceeds the statutory mandatory minimum period."  Ramirez, 252 F.3d at 519; see, e.g., United States v. Ojeda, 946 F.3d 622, 630 (2d Cir. 2020) (applying this approach); United States v. Ross, 219 F.3d 592, 595 (7th Cir. 2000) (same); United States v. Drake, 49 F.3d 1438, 1441 (9th Cir. 1995) (same); see also United States v. Moore, 918 F.3d 368, 371 (4th Cir. 2019) (discussing this approach).  Candelaria urges us to adopt this method and extend it to his discharged sentences.  But we have previously found this approach expressly inapplicable to discharged sentences.  See Ramirez, 252 F.3d at 519.  "The district court hardly could have committed plain error

by adhering to binding . . . precedent." <u>United States</u> v. <u>Gonzalez</u>, 949 F.3d 30, 42 (1st Cir. 2020).

Candelaria's disparity claim also falls short. Candelaria asserts that his 60-month sentence is "substantially disparate" from those of three co-defendants who were subject to mandatory minimums yet received credit for discharged terms of imprisonment, resulting in sentences of time served. District courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Although "the statute's main concern is minimizing 'national[]' sentencing disparities among like criminals who commit like crimes," <u>United States</u> v. <u>Romero</u>, 906 F.3d 196, 211 (1st Cir. 2018)(quoting <u>United States</u> v. <u>Martin</u>, 520 F.3d 87, 94 (1st Cir. 2008)) (alteration in original), we have "recognize[d] that 'legitimate concerns may arise' if a judge sentences 'similarly situated coconspirators or codefendants' to 'inexplicably disparate' terms," <u>id.</u> (quoting <u>United States</u> v. <u>Demers</u>, 842 F.3d 8, 15 (1st Cir. 2016)). But a claim of sentencing disparity "must compare apples to apples," <u>United States</u> v. <u>González-Barbosa</u>, 920 F.3d 125, 131 (1st Cir. 2019), and "material differences" between the defendant and the proposed comparators such as "dissimilar criminal involvement, criminal histories, or cooperation with the

government" destroy a disparity claim, Romero, 906 F.3d at 211-12.

Candelaria points to three of his co-defendants who, like him, worked as sellers for the drug operation and pleaded guilty to the same count of the indictment that he did. But the similarities end there. Two of the co-defendants--Afanador and Benitez-Perosa--were sentenced by a different judge than Candelaria was, "a fact that makes [their] sentence[s] . . . less relevant." United States v. Wallace, 573 F.3d 82, 97 (1st Cir. 2009) (citing United States v. Saez, 444 F.3d 15, 19 (1st Cir. 2006)). The other co-defendant, Rivera-Rivera, stipulated to possessing a lesser amount of cocaine than Candelaria. Candelaria provides no information about their criminal histories, the circumstances of their plea agreements, or the particularities of the relevant conduct for which he claims they received credit. Without this information we cannot determine whether these co-defendants are relevant comparators, and Candelaria's disparity claim fails.[7]

---

[7] Moreover, Candelaria concedes that he does not know why Afanador or Rivera received the sentences that they did. As for Benitez, he received an incarcerative term of eighty-seven "months minus credit for time already served . . . under USSG 5K2.23 for a total imprisonment term of TIME SERVED." It is unclear why the district court applied §5K2.23 in his case because, as discussed above, §5K2.23 cannot be used to sentence below a mandatory minimum. Regardless, an error in Benitez's sentence would not support Candelaria's disparity claim.

In sum, Candelaria waived any argument that his appeal waiver creates a miscarriage of justice for lack of development. And even had he not, he cannot show that enforcement of the appeal waiver results in a miscarriage of justice because "[n]o . . . error--garden variety or otherwise--invaded the proceedings here." <u>Santiago</u>, 769 F.3d at 8.

## III.

For the foregoing reasons, the appeal is **<u>dismissed</u>**.