# United States Court of Appeals
## For the First Circuit

No. 21-1511

UNITED STATES OF AMERICA,

Appellee,

v.

SAMUEL ARCE-AYALA, a/k/a Brócoli, a/k/a Broco, aka Vegetal,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Lipez and Montecalvo, Circuit Judges.

Rafael F. Castro Lang for appellant.
Ricardo A. Imbert-Fernández, Assistant United States
Attorney, with whom W. Stephen Muldrow, United States Attorney,
Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief,
Appellate Division, and David C. Bornstein, Assistant United
States Attorney, were on brief for appellee.

January 17, 2024

**LIPEZ**, **Circuit Judge**.  Pursuant to a negotiated agreement, appellant Samuel Arce-Ayala pled guilty to federal charges related to drug trafficking and possession of a firearm. Arce-Ayala says he understood that this plea agreement guaranteed his federal sentence would reflect "credit" for the prison time he served for related non-federal criminal convictions.  Statements from his lawyer and the district court reinforced his belief.  Yet, after entering a guilty plea, Arce-Ayala discovered such credit could not reduce his sentence below the applicable mandatory minimum terms of imprisonment.  He then moved to withdraw his plea before sentencing, but the district court denied the motion and sentenced him to the mandatory minimum prison terms for his charged offenses.

On appeal, Arce-Ayala argues the district court should have permitted him to withdraw his guilty plea because, not understanding the consequences of his plea, it was unknowing. Agreeing with his position, we vacate Arce-Ayala's criminal judgment of conviction.

## I.

### A. Federal Indictment and Prior Commonwealth Criminal Convictions

Arce-Ayala was a leader, drug point owner, and enforcer for "Los Menores," a violent drug trafficking organization in

Puerto Rico.[1] As a drug point owner, Arce-Ayala supervised the purchase, sale, and distribution of narcotics at certain public housing projects controlled by the organization. As an enforcer, Arce-Ayala would carry and use firearms to protect Los Menores' drug trafficking activities. In December 2017, a federal grand jury indicted Arce-Ayala along with 103 other individuals on charges related to their participation in Los Menores. Specifically, Arce-Ayala was charged with conspiring to possess with the intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 846, and 860 ("Count I"), and with possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) ("Count II").

Arce-Ayala was no stranger to the criminal justice system by the time he was charged federally. About five years before this federal indictment, the Commonwealth of Puerto Rico convicted Arce-Ayala on two counts of attempted second-degree murder and three firearms offenses.[2] These Commonwealth convictions stemmed from an incident in June 2011, when Arce-Ayala shot two individuals to "further the drug trafficking activities

___

[1] Our description of the relevant facts is mainly based on the unchallenged portions of the plea agreement, the change-of-plea colloquy, the presentence investigation report, and the sentencing hearing.

[2] The parties describe this conviction as a "local conviction" or a "state case." We refer to it as a "Commonwealth conviction."

of [Los Menores]." Both victims survived the attack.[3] In September 2012, Arce-Ayala was sentenced to eight years in prison for these Commonwealth convictions.

While still serving his Commonwealth sentence, Arce-Ayala was charged with the federal offenses at issue here. He ultimately served sixty-four months in Commonwealth custody before being transferred to a federal facility due to the present charges.

## B. The Plea Agreement and Change-of-Plea Hearing

Although Arce-Ayala initially pled not guilty to his federal charges, he entered a plea agreement with the government on June 5, 2020. Under the agreement, Arce-Ayala would plead guilty to both Count I and Count II of the indictment. Several provisions in the agreement governed the sentence the parties would recommend to the district court.

To start, the parties noted the applicable minimum and maximum penalties for each offense. The statutory minimum term of imprisonment for Count I, the drug trafficking conspiracy charge, was 120 months, while the maximum prison sentence was life in prison. See 21 U.S.C. §§ 841 (b)(1)(A), 860. The statutory minimum prison sentence for Count II, the firearms charge, was

_____

[3] The record provides few further details about the incident. Nevertheless, both parties agree the Commonwealth offenses were "relevant conduct" in relation to Arce-Ayala's federal drug trafficking conspiracy charge.

sixty months, while the maximum was a life term.  See 18 U.S.C. § 924(c)(1)(A).

The agreement then set out the applicable sentencing range under the United States Sentencing Guidelines ("Guidelines").  Starting with Count I, the parties agreed Arce-Ayala's Total Offense Level was thirty-one.[4]  Assuming a criminal history category of one, Arce-Ayala's Guidelines sentencing range for Count I was between 108 and 135 months.[5]  As to Count II, the agreement noted the guideline sentence is "the minimum term of imprisonment required by statute."  See U.S.S.G. § 2K2.4(b).  The statute charged under Count II, as mentioned, carries a sixty-month mandatory minimum term of imprisonment.  See 18 U.S.C. § 924(c)(1)(A).

Next, the parties agreed to recommend certain sentences for each charge.  As to Count I, they agreed to recommend the statutory minimum prison sentence of 120 months; as for Count II,

---

[4] To reach a Total Offense Level of thirty-one, the parties first stipulated that the amount of cocaine distribution attributable to Arce-Ayala was between five and fifteen kilograms. Such an amount corresponded to a Base Offense Level of thirty under the Drug Quantity Table in U.S.S.G. § 2D1.1.  A two-level enhancement applied due to Arce-Ayala's conduct taking place in a "Protected Location" under U.S.S.G. § 2D1.2(a)(1).  And an additional two-level enhancement applied because Arce-Ayala, as a leader of Los Menores, acted in an "Aggravating Role" under U.S.S.G. § 3B1.1(c).  Finally, he received a three-level deduction for acceptance of responsibility under U.S.S.G. § 3E1.1.

[5] The parties did not stipulate to Arce-Ayala's criminal history category.

- 5 -

they agreed to recommend the statutory minimum prison sentence of sixty months, which would be served consecutively to the sentence imposed from Count I.[6]

These recommendations were followed by the "relevant conduct" provision at issue in this appeal. The parties agreed Arce-Ayala's Commonwealth convictions for attempted murder (and the accompanying firearms offenses) involved "relevant conduct to the case of reference and that in the instant case, the sentence of imprisonment shall be imposed pursuant to U.S.S.G. § 5G1.3 and § 5K2.23."[7]

---

[6] By statute, the sentence imposed under Count II had to be served consecutively. See 18 U.S.C. § 924(c)(1)(D)(ii) ("[N]o term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.").

[7] U.S.S.G. § 5G1.3(b) provides that if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction," the district court shall "adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment" and order the federal sentence to run concurrently with the remainder of the undischarged sentence if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons. "Relevant [c]onduct," for these purposes, is defined as actions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

U.S.S.G § 5K2.23 provides that "[a] downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 . . . would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant

The parties appeared for a change-of-plea hearing on June 8, 2020, three days after Arce-Ayala signed the above-described agreement. There, the government summarized key provisions of the deal. During the government's description of the "relevant conduct" provision, the district court interjected to have the following colloquy with Arce-Ayala:

THE COURT: I want to ask Mr. Arce one question. Mr. Arce, you heard the Prosecutor say that some cases in which you were convicted in the State Court are relevant conduct to this case and that your sentence would be imposed pursuant to certain sections of the sentencing guidelines. Did you hear that?

ARCE-AYALA: Yes.

THE COURT: That means, Mr. Arce, that whatever time you spent in the State Court will be -- you will be given credit for that time when I sentence you in this case. Do you understand that?

ARCE-AYALA: Yes.

THE COURT: With that clarification, Mr. Arce, do you agree with the summary stated by the Prosecutor of your plea agreement?

---

offense. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense."

ARCE-AYALA:    Yes.

The district court then asked a variety of questions to determine whether Arce-Ayala had entered a knowing and voluntary plea agreement. During this exchange, the district court explained it could impose a sentence that was "either more severe or even less severe than the sentence [Arce-Ayala] may anticipate, or even the sentence being recommended in the plea agreement." Separately, the district court stated, "even after [Arce-Ayala's] sentencing guideline range has been determined, [the court would] have the authority to depart from those guidelines and impose a sentence on [him] that is either more severe or less severe than the sentence called for by the guidelines."

The court ultimately found Arce-Ayala competent to enter an informed plea and that his guilty plea was knowing and voluntary. After accepting Arce-Ayala's plea, the court scheduled his sentencing for October 6, 2020.

## C. Defense Counsel's Mistake of Law

Problems arose between the parties in the months following Arce-Ayala's guilty plea. In September 2020, Arce-Ayala's trial counsel, Ián Terón-Molina, learned the "relevant conduct" provision in the plea agreement could not provide Arce-Ayala with credit for his time served in Commonwealth custody. In sharing his mistake with Arce-Ayala, Terón-Molina explained that if he were to receive credit for his Commonwealth sentence, his

federal sentence would fall below the statutory mandatory minimum. And, contrary to their earlier assumptions, neither U.S.S.G. § 5G1.3(b) nor U.S.S.G. § 5K2.23 permitted the district court to sentence Arce-Ayala below the mandatory minimum.

Terón-Molina's belated understanding of the law was correct. Generally, "sentencing guidelines cannot be employed to impose a sentence below an applicable statutory mandatory minimum." United States v. Ramirez, 252 F.3d 516, 518-19 (1st Cir. 2001) (citing Melendez v. United States, 518 U.S. 120, 126-27 (1996)). After all, "mandatory minimums are imposed by Congress," so "only Congress -- through the enactment of another statute -- can authorize downward departures from them." United States v. Moore, 918 F.3d 368, 370 (4th Cir. 2019). With that in mind, our court has so far found only two ways for a district court to sentence below a statutory mandatory minimum. "First, if a defendant provides substantial assistance the government may move for a below-minimum sentence pursuant to 18 U.S.C. § 3553(e) or Federal Rule of Criminal Procedure 35(b). Second, the court may sentence below a mandatory minimum if a defendant has been convicted of a qualifying drug trafficking offense and meets the requirements of the 'safety valve' provision in 18 U.S.C. § 3553(f)." United States v. Candelario-Ramos, 45 F.4th 521, 525 (1st Cir. 2022) (citations omitted).

Here, Arce-Ayala neither provided substantial assistance under 18 U.S.C. § 3553(e) nor qualified for the "safety valve" provision in 18 U.S.C. § 3553(f).  Rather, Arce-Ayala believed the provisions cited in his plea agreement, U.S.S.G. § 5G1.3(b) and U.S.S.G. § 5K2.23, would provide him "credit" for his time served in Commonwealth custody on related charges.   But U.S.S.G. § 5G1.3(b) applies only "when there is an undischarged term of imprisonment at the time of sentencing." Ramirez, 252 F.3d at 519 (citing United States v. Rizzo, 121 F.3d 794, 800 (1st Cir. 1997)). By the time Arce-Ayala scheduled his federal sentencing date, his Commonwealth sentence was already discharged (that is, completed), so § 5G1.3(b) could provide no relief.[8]  And while § 5K2.23 applies to discharged sentences, it "cannot be used to sentence below a mandatory minimum." Candelario-Ramos, 45 F.4th at 526 n.7; see also Moore, 918 F.3d at 371 ("[S]everal other circuits have [addressed this question], and each has determined that U.S.S.G.

---

[8] "U.S.S.G. § 5G1.3 generally allows district courts to give credit for time served on an undischarged sentence, provided the sentence arose out of relevant conduct." Moore, 918 F.3d at 371. "And according to some Courts of Appeals, this credit can even be given where a mandatory-minimum sentence is involved, 'so long as the total of the time served and the reduced federal sentence equals or exceeds the statutory mandatory minimum period.'" Id. (quoting Ramirez, 252 F.3d at 519) (collecting cases).  Our court has not yet resolved this question. Id.  Even if there were such an exception for undischarged sentences, it would not have helped Arce-Ayala because his Commonwealth sentence was discharged by the time he was sentenced in this federal case.

§ 5K2.23 alone cannot authorize a downward departure from a mandatory-minimum sentence.").

**D. Attempts to Withdraw the Guilty Plea**

Upon learning our precedents meant that he could not receive credit for the relevant Commonwealth convictions that could bring his sentence below the mandatory minimums, Arce-Ayala asked the district court on September 28, 2020 to postpone his sentencing so the parties could revisit their plea negotiations in light of Arce-Ayala's new understanding of the relevant law. The district court granted Arce-Ayala's motion in part and rescheduled the sentencing to October 14, 2020, approximately one week after the initial date.

Over the next few months, Arce-Ayala made several more requests to postpone his sentencing date. During that time, Terón-Molina tried to persuade the government to amend the plea agreement. He proposed that Arce-Ayala could accept responsibility for more than 3.5 kilograms but less than 5 kilograms of cocaine, which would decrease his base offense level by two points, see U.S.S.G. § 2D1.1(c)(1)(6), while also removing the 120-month mandatory minimum requirement under 21 U.S.C. § 841(b)(1)(A)(ii). To compensate for these adjustments, Terón-Molina suggested Arce-Ayala could accept a four-level enhancement -- instead of a two-level enhancement -- for his leadership role in Los Menores. He believed this proposal "would set the

sentencing range higher in the proposed amendment than the original plea but would permit the [application of] credit for time served for the local case" because "it lowered the mandatory minimum to five years."  By pitching a lower applicable mandatory minimum (that is, five years instead of ten years for Count I), Terón-Molina sought to give the court latitude to credit Arce-Ayala for the time he served in Commonwealth custody.  The government rejected such a proposal.

On February 26, 2021, Arce-Ayala filed a pro se motion requesting an evidentiary hearing to address "violations of the plea agreement."  He argued that the government's refusal to credit his time served in the Commonwealth cases violated the plea agreement.  Additionally, Arce-Ayala asserted that Terón-Molina provided ineffective assistance of counsel in negotiating the plea agreement.  And because he was not adequately informed of the consequences of pleading guilty, Arce-Ayala claimed his plea did not comply with Federal Rule of Criminal Procedure 11.[9]  On May 5, 2021, the district court denied the motion in a text order stating: "The government did not violate the plea agreement."

---

[9] Before accepting a guilty plea, Federal Rule of Criminal Procedure Rule 11(b)(1) requires a district court to address the defendant "personally in open court" and "inform the defendant of, and determine that the defendant understands," among other things, the rights they are waiving by pleading guilty.  For example, Rule 11(b)(1)(I) requires a court to establish that the defendant understands "any mandatory minimum penalty."

On May 26, 2021, Arce-Ayala, through Terón-Molina, moved for leave to withdraw his plea agreement on the same grounds raised in the pro se motion. The district court, again, denied Arce-Ayala's motion in a one-sentence order, this time with no explanation. Two weeks later, on June 10, 2021, Arce-Ayala filed a pro se motion to remove Terón-Molina as counsel and to request the appointment of new counsel before his sentencing hearing. The district court denied this motion, too, with no explanation.

**E. Sentencing**

Arce-Ayala appeared before the district court for sentencing on June 21, 2021. In his sentencing memorandum, Arce-Ayala requested a sentence of 120 months for Count I and sixty months for Count II to be served consecutively, but also asked the court to reduce his sentence by sixty-four months to account for the time he served in Commonwealth custody. During the sentencing hearing, Terón-Molina began his presentation on behalf of Arce-Ayala by reincorporating the arguments raised in the motions to withdraw the guilty plea. The court again denied those motions. In his own statement to the court, Arce-Ayala reiterated that he pled guilty on the understanding that he would receive credit for his Commonwealth sentence.

The government recommended a 120-month prison sentence as to the drug trafficking conspiracy charge (Count I) and sixty consecutive months as to the firearms charge (Count II). But with

respect to Arce-Ayala's prior Commonwealth convictions, the government argued the "relevant conduct" provision of his plea agreement meant those offenses would not factor into his criminal history category, which remained at Category I. The district court calculated the Guideline range for Count I as between 120 to 135 months. The district court noted the Guidelines sentence for Count II was the "minimum term of imprisonment required by statute," which was sixty months under 18 U.S.C. § 924(c)(1)(A). The district court then sentenced Arce-Ayala to 120 months as to the drug trafficking conspiracy offense and sixty months as to the firearms offense to be served consecutively.

Arce-Ayala now appeals his conviction.

## II.

A defendant may withdraw a guilty plea before sentencing if he can show "a fair and just reason for requesting the withdrawal." See Fed. R. Crim. P. 11(d)(2)(B). This standard is "liberal," United States v. Gardner, 5 F.4th 110, 114 (1st Cir. 2021) (quoting United States v. Kobrosky, 711 F.2d 449, 454 (1st Cir. 1983)), and "permissive," id. (quoting United States v. Merritt, 755 F.3d 6, 9 (1st Cir. 2014)), but not toothless, see Merritt, 755 F.3d at 11 ("[L]iberal allowance is not to be confused with automatic allowance."). Indeed, a defendant does not have "an unfettered right to retract a guilty plea." United States v.

Flete-Garcia, 925 F.3d 17, 24 (1st Cir. 2019) (quoting Merritt, 755 F.3d at 9).

To determine whether a defendant has shown a "fair and just reason" to withdraw a guilty plea, courts typically consider: "(1) whether the original plea was knowing, intelligent, and voluntary and in compliance with Rule 11, (2) the strength of the reason for withdrawal, (3) the timing of the motion to withdraw, (4) whether the defendant has a serious claim of actual innocence, (5) whether the parties had reached (or breached) a plea agreement, and (6) whether the government would suffer prejudice if withdrawal is permitted." Gardner, 5 F.4th at 114 (first citing United States v. Dunfee, 821 F.3d 120, 127 (1st Cir. 2016) (per curiam), then citing United States v. Tilley, 964 F.2d 66, 72 (1st Cir. 1992)).[10] Yet district courts must ultimately look to "the

_____

[10] Whether courts should consider the presence or absence of government prejudice as part of an initial inquiry remains an open question in our circuit. In some cases, we have instructed district courts to consider prejudice to the government only after the defendant makes a threshold showing of a fair and just reason for withdrawal. See, e.g., Flete-Garcia, 925 F.3d at 24; Merritt, 755 F.3d at 9; United States v. Todd Isom, 85 F.3d 831, 834-35 (1st Cir. 1996). In other cases, we have suggested the presence or absence of prejudice to the government should be considered holistically, as a relevant factor to be weighed against the others in determining whether a fair and just reason for withdrawal exists. See Dunfee, 821 F.3d at 127; compare Gardner, 5 F.4th at 118-19 & n.9 (considering these factors holistically), with id. at 122 (Lynch, J., dissenting) (arguing that a court may consider prejudice only if the totality of the other factors weighs in favor of withdrawal).

We need not resolve this conflicting authority here because under the circumstances presented both approaches lead to the same

totality of the relevant circumstances," United States v. Nieves-Meléndez, 58 F.4th 569, 574 (1st Cir. 2023) (quoting Flete-Garcia, 925 F.3d at 24), so these six considerations do not represent an "exclusive list of reasons that might allow withdrawal of a plea," id. (quoting Gardner, 5 F.4th at 114).

The first consideration -- whether the plea was knowing, intelligent, and voluntary and in compliance with Rule 11 -- holds special weight for good reason. See United States v. Derrick Isom, 580 F.3d 43, 52 (1st Cir. 2009) (noting that the "most important" factors to consider are whether a guilty plea was knowing, intelligent, and voluntary). Due process requires a voluntary and knowing waiver of the constitutional entitlement to trial. See McCarthy v. United States, 394 U.S. 459, 466 (1969). Hence, district courts must determine that a defendant understands the consequences to pleading guilty, see Fed. R. Crim. P. 11(b)(1), while also evaluating whether a guilty plea is voluntary and not the result of force, threats, or promises beyond a plea agreement, see Fed. R. Crim. P. 11(b)(2).

As part of this inquiry, we have distilled three "core concerns" of Rule 11: (1) "a lack of coercion," (2) "the defendant's understanding of the charges against him," and (3) "the defendant's 'knowledge of the consequences of the guilty

outcome. See United States v. Fonseca, 49 F.4th 1, 7 n.5 (1st Cir. 2022) (declining to resolve this split in precedent).

- 16 -

plea.'" United States v. Williams, 48 F.4th 1, 6 (1st Cir. 2022) (quoting United States v. Cotal-Crespo, 47 F.3d 1, 4 (1st Cir. 1995)). A failure to satisfy any one of these core concerns "requires that the guilty plea be set aside." Todd Isom, 85 F.3d at 835 (citing United States v. Gray, 63 F.3d 57, 60 (1st Cir. 1995)).

Given the fact-intensive nature of plea withdrawal inquiries, we trust these decisions to the sound discretion of district courts. See United States v. Caramadre, 807 F.3d 359, 370 (1st Cir. 2015). We review the denial of a motion to withdraw a guilty plea for abuse of such discretion. See United States v. Adams, 971 F.3d 22, 38 (1st Cir. 2020) (citing United States v. Dávila-Ruiz, 790 F.3d 249, 251 (1st Cir. 2015)).

**III.**

This case turns on the third "core concern" of Rule 11. Arce-Ayala argues that the district court and his defense attorney's statements misled him into believing he would "receive credit" for his time served in Commonwealth custody on related charges.[11] Because he pled guilty on the mistaken assumption that he would receive such credit regardless of the applicable mandatory

---

[11] Arce-Ayala also alleges the prosecutors "knew that [he] would not be able to receive the 64-month credit," but took advantage of his and his lawyer's "lack of knowledge of the law" to "induce him to accept the Plea Agreement." We need not reach that issue here.

minimum terms, Arce-Ayala contends he "did not know the consequences of his guilty plea," thus implicating a "core concern" of Rule 11.[12]

## A. The District Court's Comments

During the change-of-plea hearing, the district court emphasized that Arce-Ayala was "convicted in the State Court" for offenses involving "relevant conduct to this case." Beyond simply stating that factual predicate, the district court sought to clarify the legal effect of the "relevant conduct" provision in Arce-Ayala's plea agreement. That is, the district court told Arce-Ayala the provision "mean[t] . . . [he] will be given credit" for "whatever time [he] spent in the State Court" when sentenced in this case (emphasis added).

---

[12] We summarily reject the government's forfeiture contention. Arce-Ayala, the government asserts, "forfeited the argument that the district court should have let him withdraw his guilty plea" because Arce-Ayala only asked the district court for leave to "withdraw from his plea agreement, but not his plea." Plea agreements and pleas are, of course, distinct. See Gardner, 5 F.4th at 114. Even though Arce-Ayala conflated the two at times, the record makes clear he moved to withdraw his guilty plea in addition to his plea agreement. At the sentencing hearing, for example, Terón-Molina reiterated that Arce-Ayala sought to "withdraw the plea agreement and the plea of guilty" (emphasis added). And in his motions below, Arce-Ayala consistently cited Federal Rule of Criminal Procedure 11, which governs both plea agreements and the acceptance of guilty pleas by a court. Finally, the government even admits that, when it opposed his request for relief in the district court, it "treated Arce-Ayala's pro se motion as a motion to withdraw his guilty plea . . . ." In light of this record, the government's forfeiture argument borders on the frivolous.

- 18 -

Arce-Ayala could have reasonably interpreted the district court's remark as a guarantee that he would receive credit for his time served in state custody. The comment that he would be "given credit" contained no conditions or reservations. Nowhere did the district court qualify its statement by noting, notwithstanding such credit, the statutory minimums represented an absolute floor for his term of imprisonment.

Separately, the district court noted it "ha[d] the authority to depart from th[e] guidelines and impose a sentence on [Arce-Ayala] that is either more severe or <u>less severe</u> than the sentence called for by the guidelines" (emphasis added). Of course, this comment simply explains the advisory nature of the sentencing guidelines under <u>United States</u> v. <u>Booker</u>, 543 U.S. 220, 245 (2005). But we cannot assume a reasonable person, having heard the other remarks from the district court, would be able to distinguish this comment about the advisory nature of the sentencing guidelines from the mandatory nature of statutory minimum sentences.

To be sure, the district court noted that, as to Count I, Arce-Ayala could not be sentenced to "anything less than ten years." Still, that statement is difficult to square with the district court's explanation that it could impose a sentence that was "either more severe or <u>even less severe</u> than the sentence [Arce-Ayala] may anticipate, or even the sentence being

- 19 -

recommended in the plea agreement" (emphasis added). After all, the sentence recommended in the plea agreement was the sum of the mandatory minimum terms, so one could interpret the district court's remark as conveying an ability to impose a sentence less severe than the mandatory minimums.

We have addressed similarly misleading statements on several occasions. In United States v. Hernandez-Wilson, 186 F.3d 1 (1st Cir. 1999), for example, we vacated a conviction based on the defendant's misunderstanding of his eligibility for the safety valve provision in 18 U.S.C. § 3553(f). Id. at 6. There, the district court "represented to [the defendant] that his criminal history made him eligible for sentencing under the safety valve." Id. But because the defendant committed the offense at issue while on probation, his criminal history category was too high to qualify for the safety valve provision. Id. at 4. In fact, the defendant could not "be sentenced to anything less than . . . the statutory mandatory minimum sentence for the crime to which [he] was pleading guilty." Id. We set aside the defendant's guilty plea because it was "induced at least in part by an inaccurate representation by the court about the consequences of his plea." Id. at 6.

Likewise, in United States v. Gray, 63 F.3d at 57, we vacated a conviction where the district court mistakenly stated, "[t]he maximum punishment [was] ten years to life" and that "the matter of [the defendant's] sentence [was] up to [the court]."

Id. at 60 (emphasis omitted). Those statements were incorrect: "in fact, the mandatory minimum sentence for the crime to which [the defendant] pled guilty was ten years, and the court had no discretion over this minimum sentence." Id. (emphasis omitted). In vacating the conviction, we explained that "the substance of what [the district court] communicated to [the defendant] . . . could have led a reasonable person to misunderstand the consequences of his guilty plea in th[at] context, thus implicating one of Rule 11's core concerns." Id. at 61.

Conversely, in United States v. Bierd, 217 F.3d 15 (1st Cir. 2000), we rejected a defendant's assertion that a district court misled him into pleading guilty. Id. at 21-22. During the change-of-plea hearing in that case, the district court suggested the defendant "would be entitled to a three point reduction for acceptance of responsibility" when "he actually was entitled to only a two point reduction." Id. at 21. Although the district court's initial comment "envisioned a three point reduction," the "subsequent and more important references to the reduction at the plea colloquy" simply provided the correct sentencing range in terms of months without referencing any specific point-based reduction. Id. at 22. In declining to invalidate the defendant's plea we explained that the district court's reference to a three point reduction was "an off-hand remark" rather than a "meaningful

- 21 -

portion of the plea colloquy." Id. Furthermore, the district court later in the same hearing "characterized the reduction as only a possibility," so the initial comment was not necessarily misleading. Id.

It is true that here the text of the plea agreement itself did not promise Arce-Ayala "credit" for the time he served for relevant conduct.[13] But, in reviewing that very plea agreement with Arce-Ayala, the district court expressed without reservation that Arce-Ayala would receive credit for his time served in Commonwealth custody when, in fact, there was "no possibility" Arce-Ayala would receive "anything less than . . . the statutory mandatory minimum sentence." Hernandez-Wilson, 186 F.3d at 4. The district court's "credit" comment was expressed as a clarification of the agreement writ large. That statement was no mere "off-hand remark." Bierd, 217 F.3d at 22. Nor was the application of such credit "characterized . . . as only a possibility." Id. And given the district court's observation that it could impose a sentence "less severe" than the parties' recommendation, a reasonable person could have mistakenly assumed the application of such credit need not stop at a mandatory minimum sentence. See Gray, 63 F.3d at 61.

---

[13] It is also worth noting that neither U.S.S.G. § 5G1.3(b) nor U.S.S.G. § 5K2.23 use the term "credit."

- 22 -

The government argues the plea agreement never contained a "false promise" of credit. The "relevant conduct" provision, the government asserts, had two effects: (1) it ensured Arce-Ayala's prior convictions would not factor into his criminal history category;[14] and (2) it guaranteed that, if Arce-Ayala's pre-sentence report calculated a higher than expected criminal history category, and thus a higher sentencing range under the Guidelines, "he could have used [a U.S.S.G. § 5K2.23] departure to reduce his [Guidelines sentencing range]." The government contends the district court's commentary intended to explain these "legitimate" effects of the provision, "not the illegal one [Arce-Ayala] desired."

But these rationales simply suggest ways Arce-Ayala could have interpreted the provision without explaining how a reasonable person, after hearing the district court's comments, would have interpreted the provision. Even assuming there are ways to construe the provision to give it legal effect, "the substance of what [the district court] communicated to [Arce-Ayala]" would still lead "a reasonable person to misunderstand the consequences of his guilty plea . . . , thus implicating one of Rule 11's core concerns." Gray, 63 F.3d at 61.

---

[14] The government represents that, under U.S.S.G. § 4A1.1(a), Arce-Ayala would have otherwise received three criminal history points for his prior convictions.

Indeed, the government's suggested interpretations of the provision are not so apparent as to undermine the basis for Arce-Ayala's misunderstanding. First, the change-of-plea colloquy belies the notion that the "relevant conduct" provision was only intended to limit Arce-Ayala's criminal history category. Before explaining the provision, the government said during the change-of-plea hearing that it would recommend 120 months of imprisonment as to Count I and sixty consecutive months as to Count II "regardless of [Arce-Ayala's] criminal history category." Second, the structure of the plea agreement weighs against the government's explanation because the "relevant conduct" provision is placed not in the "criminal history category" section, but the "sentence recommendation" section.

Finally, the government's representations in a case against a different defendant undermine its argument in this case. In United States v. Candelario-Ramos, 45 F.4th at 523, the United States Attorney's Office for the District of Puerto Rico conceded that it was mistaken about the interaction between a similar "relevant conduct" provision and mandatory minimum sentencing requirements. In that case, the government explained that for the better part of a year -- from February to November 2020 -- it "had not been aware of 'the Sentencing Commission's opinion in terms of credit that can and cannot be provided' and had 'negotiated all the pleas [in that case] under the mistaken understanding that the

co-defendants were going to receive credit for the relevant conduct cases.'" Id. (brackets omitted); see also Brief for Appellee at *6, *14-15, United States v. Candelario-Ramos, 45 F.4th 521 (1st Cir. 2022) (No. 20-1988), 2021 WL 2525761 (brief of United States Attorney's Office for the District of Puerto Rico noting the government was not aware of case law prohibiting district courts from sentencing defendants below a mandatory minimum sentence). Again, Arce-Ayala need only show his misinterpretation was reasonable. See Gray, 63 F.3d at 61 (vacating conviction where district court's comments "could have led a reasonable person to misunderstand the consequences of his guilty plea"). Given that the government appears to have held the same misunderstanding as Arce-Ayala and his legal counsel, a reasonable person could have made the same mistake.

## B. Defense Counsel's Comments

We briefly note that Arce-Ayala was particularly susceptible to interpreting the district court's comments as guaranteeing him credit towards his federal sentence because his counsel provided him incorrect legal advice as to the effect of his plea.

From the outset of negotiations, Arce-Ayala evidently expressed dissatisfaction with the length of imprisonment recommended by the plea agreement. Arce-Ayala and Terón-Molina assert they eventually "signed the plea agreement under the

impression that . . . the time served for [the Commonwealth][c]riminal [c]ases [was] relevant conduct to the instant case and could be credited to the sentence imposed for the instant federal case." They both believed the plea agreement's "relevant conduct" provision memorialized such an arrangement.[15] By assuming that provision could bring Arce-Ayala's sentence below a statutory minimum sentence, Terón-Molina's representation may have sunk below "the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970). Terón-Molina's interpretation of such a provision was squarely precluded by precedent. See Ramirez, 252 F.3d at 518–19; see also supra Section I.C. In Terón-Molina's own words, "[he] was supposed to know th[e] [relevant conduct] stipulation was unenforceable."

On this basis, Arce-Ayala asserts a constitutional claim for ineffective assistance of counsel. Although bad legal advice can be a basis for invalidating a guilty plea, see Caramadre, 807 F.3d at 371 (explaining the standard for assessing an infective assistance of counsel claim in the context of a plea-withdrawal

---

[15] During his sentencing hearing, Arce-Ayala explained: "The only thing that I requested from my attorneys was that they would obtain the relevant conduct of this indictment with the sentence that I was serving in state court. . . . [My] attorney expressed my desire to the prosecutors. Both [p]rosecutor[s] . . . accepted that relevant conduct be included. This you can confirm if you look at Section 9, paragraph 2, on page 6 of the plea. So clearly it is stipulated as part of the plea agreement of that being the relevant conduct."

motion), we need not reach that issue here. Instead, we identify Terón-Molina's incorrect legal advice only to help explain why Arce-Ayala lacked the requisite knowledge to enter a guilty plea. See United States v. Fernández-Santos, 856 F.3d 10, 17 n.3 (1st Cir. 2017) (rejecting argument that an ineffective assistance of counsel issue may be raised only under 28 U.S.C. § 2255 and explaining that "ineffective assistance of counsel may be a 'fair and just reason' to withdraw a guilty plea or may render a plea unknowing or involuntary") (internal citations omitted).

In sum, Arce-Ayala was told by his defense counsel that the sixty-four months he spent in Commonwealth custody would be credited toward his federal sentence. The district court then seemingly confirmed that mistaken assumption through a series of misleading remarks. Because he did not know that the mandatory minimum prison sentence set an inviolable floor as to the amount of credit he could receive for time served on the Commonwealth sentences, Arce-Ayala lacked sufficient "knowledge of the consequences of the guilty plea." Williams, 48 F.4th at 6 (quoting Cotal-Crespo, 47 F.3d at 4). Arce-Ayala's plea thus violated a "core concern" of Rule 11 and must be set aside. See Todd Isom, 85 F.3d at 835.

- 27 -

## IV.

We vacate the criminal judgment and remand this case to the district court for further proceedings.  Arce-Ayala shall be permitted to withdraw his guilty plea.

So ordered.